LAUREL BEACH ASSOCIATION *v.* ZONING BOARD
OF APPEALS OF THE CITY OF MILFORD ET AL.
(AC 20905)

Lavery, C. J., and Landau and Peters, Js.

Argued June 5—officially released November 6, 2001

*George F. Martelon, Jr.*, for the appellant (plaintiff).

*Brian A. Lema*, for the appellee (defendant Elizabeth Stevens).

*Opinion*

LAVERY, C. J. The plaintiff, Laurel Beach Association, appeals from the judgment of the trial court dismissing its appeal from the decision of the defendant zoning board of appeals of the city of Milford (zoning board). The plaintiff claims that the zoning board acted improperly in upholding the decision of its zoning enforcement officer, who granted a permit to the defendant Elizabeth Stevens (Stevens)[1] for one of her parcels to be considered a legally nonconforming lot. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. Stevens is the owner of adjacent lots, numbered twenty-six and twenty-seven,

---

[1] Stevens is the only defendant to have filed an appellate brief and argued before this court.

on Seaview Avenue in Milford. From 1968 until 1994, she and William Stevens, who was then her husband, held title to lot 27. William Stevens alone held title to lot 26. On September 13, 1994, as part of a dissolution settlement, he transferred the title to both lots to Stevens.

Lots 26 and 27 were created during the formation of a Laurel Beach subdivision in 1901. The first zoning regulations were adopted in Milford in 1928. Lot 26, as with the other twenty-two lots along Seaview Avenue from Third Avenue through Eighth Avenue, does not conform to the requirements of R-10, the zone in which those lots are located.[2] Eight of the lots have the same fifty foot frontage as does lot 26. Of the twenty-three lots, only lot 26 does not have a house constructed on it.

In 1988, William Stevens applied to the zoning board for a zoning permit and special exception to build a house on lot 26.[3] The zoning board, by a four to one

[2] The minimum requirement for lot area in an R-10 zone in Milford is 10,000 square feet, with a minimum lot depth of 100 feet and a minimum lot width of seventy feet. Lot 26 has a lot depth of 100 feet and a lot width of fifty feet.

[3] In 1988, § 6.4.2 of the zoning regulations, titled, "Use of Non-Conforming Lots When Applicants or Predecessor Own/Owned Adjacent Land," provided:

"A zoning permit may be issued subject to a Special Exception granted by the Zoning Board of Appeals for an allowable use on a lot which does not meet the standards for lot area and/or width of the particular zone in which said lot is located if:

"(1) The present owner or his predecessors in title did not illegally create this non-conforming lot and that the lot was of legal size when it was created as a lot.

"(2) The present owner or his predecessors in title, as determined by an attorney, do now or have owned adjacent land since the time the lot was caused to become non-conforming by virtue of a revised zoning regulation.

"(3) Since the time the lot was caused to become non-conforming by virtue of a revised zoning regulation, the lot has never been utilized in conjunction with adjacent property so that the identity of the lot in question has not merged with adjacent property.

"(4) All yard setback, coverage and other zone requirements can be met; and further provided the owner or his agent presents satisfactory evidence of compliance with this Section.

vote, denied his request. The decision was upheld in an appeal to the Superior Court in 1988.

Effective February 1, 1989, Milford enacted new regulations under § 6.4.2[4] that removed the requirement of

"(5) The lot was never sold by the City of Milford with any stipulation that would prohibit its use as a separate building lot.

"(6) Notice. Upon application for a zoning permit under this Section 6.4.2, a Special Exception application shall be made to the Zoning Board of Appeals in accordance with the requirements of Section 9.2.3 Special Exceptions."

[4] Effective February 1, 1989, § 6.4.2 was amended. The relevant changed provisions provide:

"A zoning permit may be issued subject to a [sic] application granted by the Zoning Officer for an allowable use on a lot which does not meet the standards for lot area and/or width of the particular zone in which said lot is located if . . .

"(3A) Since the time the lot was caused to become non-conforming by virtue of a revised zoning regulation, the lot has never been utilized in conjunction with adjacent property so that the identity of the lot in question has not merged with adjacent property.

"(3B) The determination of whether a lot has been so utilized in conjunction with adjacent property so that its identity as a separate lot has ceased and it has merged with the adjacent property is a factual determination to be made on a case by case basis upon the facts and circumstances of each individual application. Therefore, no fixed set of criteria can be said to establish such a merger for all cases. Listed below by way of example only, and not of limitation are some factors which may be indicative of a merger, depending upon the surrounding circumstances of the particular case.

"(a) If, at the time the house was constructed, the minimum lot size required by the Zoning Regulations exceeded the size of the house lot, itself, the vacant lot will be considered merged with the original house lot, i.e., if the minimum lot size could only be achieved by utilizing both lots together at the time the house was constructed, a merger will have occurred. . . .

"(b) The vacant lot is regularly utilized to provide off street parking for the existing dwelling on the adjacent house lot.

"(c) A structure on the adjacent house lot encroaches over onto the vacant lot, or hearing evidence establishes that the vacant lot has been cleared of such an encroachment.

"(d) The vacant lot contains some non-temporary structure or improvement used in relationship with the adjacent house lot; e.g., storage shed, garage, tennis court, swimming pool, barbecue facility, patio, etc.

"(e) The applicant or his predecessor characterized the adjacent house lot and the vacant lot as one lot for purposes of some prior building or zoning approval; e.g., to construct a deck on the house without violating side yard setback requirements.

"(3C) Some factors which are not sufficient in and of themselves to

special exception approval.[5] In December, 1998, Stevens submitted an application under § 6.4.2 to build a house on lot 26. On December 16, 1998, the zoning enforcement officer determined that lot 26 was a legal nonconforming lot. The plaintiff appealed to the zoning board, which affirmed the decision, by a three to two vote, on January 12, 1999. The plaintiff next appealed to the court, which rendered a judgment of dismissal in a March 15, 2000 memorandum of decision. We granted certification to appeal, and this appeal followed. Additional facts will be provided as necessary.

The plaintiff claims that the court improperly (1) concluded that the plaintiff did not sustain its burden of proof that the zoning board acted illegally, arbitrarily and in abuse of its discretion in reversing the decision that it made in 1988, (2) concluded that collateral estoppel and res judicata were inapplicable to the 1999 approval, (3) refused to find that the recognition of lot 26 as legally nonconforming resulted in making lot 27 nonconforming and (4) failed to find that the lots had merged for zoning purposes in accordance with the city's ordinance.

I

The plaintiff first asserts that the court improperly concluded that the plaintiff failed to carry its burden

---

constitute a merger of a vacant lot with an adjoining house lot include, but are not limited to:

"(a) The fact that the grass on the vacant lot has been mowed and leaves have been raked.

"(b) The fact that a vegetable or flower garden has existed on the vacant lot.

"(c) The fact that the vacant lot has been used for occasional recreational pursuits, e.g. picnics, baseball, badminton, volleyball, etc.

"(d) The fact that the vacant lot has been utilized for overflow parking for the house lot, on an occasional, non-frequent basis. . . ."

[5] According to the testimony of the zoning enforcement officer before the zoning board, the regulations were adopted in part to clarify the process, to avoid the inconsistent and arbitrary results that occurred under the prior regulations, and to "liberalize" the approval process.

of proof that the zoning board in 1999 improperly reversed the decision that it made in 1988 without evidence of a material change between the time of the 1988 application and the time of Stevens' 1998 application. We disagree.

Trial courts defer to zoning boards and should not disturb their decisions so long as "honest judgment has been reasonably and fairly exercised after a full hearing." *Molic* v. *Zoning Board of Appeals*, 18 Conn. App. 159, 164, 556 A.2d 1049 (1989). The trial court should reverse the zoning board's actions only if they are unreasonable, arbitrary or illegal. *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 628, 711 A.2d 675 (1998). If the zoning board has not given the reasons for its decision, the trial court must search the entire record to find a basis for its decision. *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 464, 668 A.2d 340 (1995). "Where it appears from the record that the action of a zoning authority rested on more than one ground, the authority's action must be sustained so long as the record supports at least one of the grounds." *Hoagland* v. *Zoning Board of Appeals*, 1 Conn. App. 285, 290, 471 A.2d 655 (1984). The burden of proof is on the plaintiffs to demonstrate that the zoning board acted improperly. *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 707, 535 A.2d 799 (1988).

When a party files successive applications for the same property, a court makes up to two inquiries. The first is to determine whether the two applications seek the same relief. The zoning board determines that question in the first instance, and its decision may be overturned only if it has abused its discretion. *Fiorilla* v. *Zoning Board of Appeals*, 144 Conn. 275, 279, 129 A.2d 619 (1957). If the applications are essentially the same, the second inquiry is whether "there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter

decided." *Malmstrom* v. *Zoning Board of Appeals*, 152 Conn. 385, 390–91, 207 A.2d 375 (1965); *Bradley* v. *Inland Wetlands Agency*, 28 Conn. App. 48, 50–51, 609 A.2d 1043 (1992). For an appellate court, the only question is whether the trial court's finding as to the zoning board's decision is clearly erroneous. See *Fernandes* v. *Zoning Board of Appeals*, 24 Conn. App. 49, 53–54, 585 A.2d 703, rev'd on other grounds, 218 Conn. 909, 591 A.2d 811 (1991).

The plaintiff first alleges that the Stevens' applications sought the same relief: To build a house on lot 26. Assuming that the applications were essentially the same, the plaintiff next alleges that the 1989 zoning regulation changes were "ministerial," not material. Noting that neither the zoning board nor the court discussed specifically whether the amendment of § 6.4.2 of the zoning regulations was a material change, the plaintiff argues that the court abdicated its responsibility to expressly search the record for substantial evidence that the zoning board correctly interpreted and applied its regulations.

Stevens responds that the 1988 application is not substantially the same as the approved 1998 application because of the "substantive" changes in § 6.4.2 of the zoning regulations, which the court expressly recognized in its March 15, 2000 memorandum of decision. Relying on *Baron* v. *Planning & Zoning Commission*, 22 Conn. App. 255, 257, 576 A.2d 589 (1990), she argues that the zoning board is entrusted with the function of applying its regulations, and that zoning boards of appeal generally hear and decide appeals de novo. *Conetta* v. *Zoning Board of Appeals*, 42 Conn. App. 133, 137, 677 A.2d 987 (1996).

The court's conclusion, based on *Bradley* v. *Inland Wetlands Agency*, supra, 28 Conn. App. 51, that it is solely for the board and not the court to determine

whether the codefendant's petition was a new application or substantially the same as the earlier application; see *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission*, 161 Conn. 50, 58, 282 A.2d 890 (1971); seems to give a zoning board absolute discretion. Such a statement glosses over the court's inquiry as to whether the agency abused its discretion. See *Fiorilla* v. *Zoning Board of Appeals*, supra, 144 Conn. 279. That realization, however, does not change the outcome.

It is indeed unclear whether the zoning board considered Stevens' proposal to be substantially the same as the 1988 application. There is some language in the court's decision to support the proposition that the zoning board considered Stevens' application to be different. For instance, the court properly found that the revised § 6.4.2 of the zoning regulations no longer required an owner to get a special exception and shifted the approval responsibility from the zoning board to a zoning enforcement officer. The court also noted the public hearing testimony of the zoning enforcement officer, who gave his opinion that § 6.4.2 was changed because the old regulation created inconsistent results and that the changes "liberalized" the former version of § 6.4.2.

Even if the zoning board concluded that those applications were essentially the same, it does not necessarily follow that it abused its discretion in granting the permit. See *Malmstrom* v. *Zoning Board of Appeals*, supra, 152 Conn. 390–91. The court found that the record before the zoning board that was submitted by Stevens included several photographs of the lots, copies of checks and tax bills showing that both lots are taxed separately by the city and by the plaintiff, subdivision maps and a certificate of title with related documentation showing the property's chain of title. As stated more fully in our discussion of the plaintiff's collateral estoppel claim in part II, that information was not pre-

sented to the zoning board when William Stevens applied for a permit in 1988. As a result, the zoning board could have properly granted the permit in 1998 even if it did view the relief requested as substantially similar.

## II

The plaintiff next contends that the court improperly concluded that the theories of issue preclusion (collateral estoppel) and claim preclusion (res judicata) were inapplicable to this case. We disagree.

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999).

"Both doctrines . . . express no more than the fundamental principle that once a matter has been fully and fairly litigated and finally decided, it comes to rest." (Citation omitted; internal quotation marks omitted.) Id. "If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. . : . Thus, statements by a court regarding a nonessential issue are treated as merely dicta." (Citations omitted; internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260–61, 773 A.2d 300 (2001). Because collateral estoppel "has dramatic consequences for the party against whom the doctrine is applied . . . the court must specifically determine that an issue that is presented in the second case was necessary to the judgment in the first case . . . ." (Citations omitted.) Id., 261–62.

The plaintiff claims that the 1988 court decision addressed the underlying fact of whether the properties had merged by use, thereby precluding the 1998 application. Specifically, it highlights statements made by a member of the zoning board to the effect that the property had merged by use and argues that the merger issue was "central" to the 1988 court's memorandum of decision.

Stevens argues that her later application was not barred by either claim preclusion or issue preclusion. First, she argues that the court correctly concluded that the 1988 court did not deny the permit application on the basis of merger, but on the basis of the zoning board's discretion to deny a zoning permit subject to a special exception. Although the zoning board discussed merger in 1988, she argues that it did not necessarily find that the two lots had merged. Second, Stevens argues that the court did not improperly conclude that collateral estoppel was inapplicable because merger was not key to the 1988 court's determination. Instead, she argues that any mention of merger was mere dictum. Third, Stevens argues that the merger issue was not actually litigated in the 1988 case. To the extent that it was, she argues that it was not "fully and fairly litigated."

As to the collateral estoppel claim, the court properly found that the 1988 court did not necessarily determine the merger issue. Instead, the court found that the 1988 court dismissed William Stevens' appeal because he had not carried his burden of proving that he was entitled to a zoning permit subject to a special exception. Although the court found that zoning board members had voiced their opinion in 1988 that there had been merger by use, the court found that it would have been improper for the 1988 court to agree because the only issue before it was whether the zoning board had abused its discretion in denying the special exception.

Furthermore, Stevens is correct that merger was not fully and fairly litigated in 1988. William Stevens' architect was not prepared to make a presentation before the zoning board regarding either the need for a special exception or the merger doctrine.[6] By contrast, the plaintiff hired an attorney who made a presentation, submitted aerial photographs and other exhibits, presented fourteen neighbors to speak in opposition and submitted letters of opposition from six neighbors. The 1988 court merely reviewed and recited the facts that were before the zoning board. In 1999, Stevens retained an attorney, who made a formal presentation, which included the introduction of exhibits and case law. The plaintiff again retained an attorney, who made a presentation, submitted aerial photographs and other exhibits, had eight neighbors speak in opposition and submitted three letters in opposition.

Rejecting the plaintiff's claim that res judicata applied, the court found that because the amended § 6.4.2 of the zoning regulations did not exist at the time of the 1988 appeal, a claim could not be brought under that amended regulation. *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 856 n.4, 670 A.2d 1271 (1996). Therefore, it found that res judicata was inapplicable.

The court properly found that neither the theory of collateral estoppel nor the theory of res judicata applied to bar Stevens' application. That is especially true in light of the dramatic consequences of issue preclusion. As to its res judicata analysis, the court's reasoning

---

[6] The following colloquy between the zoning board of appeals and William Stevens' architect is illustrative:

"[Board Chairman]: In order to hear a special exception, I would like you to comment on our regulation 9.2.3, which lists five different things that you should be informing yourself concerning this property. OK? Such as the nature of location, size intensity, with regulations 9.2.3 (1), (2), (3), (4), (5). Would you care to go ahead with that at all?

"[Architect]: No, I think not."

properly was predicated on its finding that Stevens' application was based on a materially changed provision of § 6.4.2 of the zoning regulations. We point out, however, that this reasoning applies only to amendments that materially change a provision on which a later appeal is based.[7] Not every minor amendment or technical change will foreclose the application of res judicata.

### III

The plaintiff's third contention is that the court improperly refused to conclude that the recognition of lot 26 as legally nonconforming resulted in making lot 27 nonconforming in violation of the side line setback requirement. In 1969, William Stevens petitioned the city for a building permit to construct a deck off of the house on lot 27 extending toward lot 26. No variance was required. At the 1988 and 1999 hearings, the plaintiff submitted for review William Stevens' 1969 application, which stated that the lot area was 100 feet by 120 feet, the area of lots 26 and 27 combined. The plaintiff alleges that if lot 26 is considered to be a legally nonconforming lot, the deck on lot 27 would be within the four foot setback for side lines in violation of § 6.4.1 of the zoning regulations. The plaintiff argues that this is inconsistent with the goal of zoning to reduce the number of nonconforming lots, citing *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 740, 626 A.2d 705 (1993).

After first noting that the deck does not encroach onto lot 26, Stevens responds that she informed the zoning board in her 1998 application that she was willing to reduce or remove the deck to comply with side lot regulations. In any event, she argues that the noncon-

---

[7] In *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 850, the plaintiff homeowner based his appeal on a statutory codification of judicial practice that became General Statutes § 8-6 (b).

forming nature of the deck began with its creation in 1969 and is now protected by General Statutes § 8-13a (a), which grants the deck legally existing nonconforming status.[8]

Neither party cites anything in the record to support the assertion that the zoning board made an explicit determination regarding the deck. The trial court also did not rule on the issue. Both fact finders may have relied on Stevens' representation that she would reduce or remove the deck if she were granted a permit. The record reflects that this was her position before the zoning board, the trial court and in her statement in opposition to the plaintiff's petition for certification to this court. Stevens' alternative defense that the deck is protected by statute, raised for the first time in her appellate brief, is rejected. We do not review claims where a party waives or concedes them during trial and attempts to raise them before an appellate court; see *State* v. *Cobb*, 251 Conn. 285, 342–43, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); nor do we do so where a party attempts to raise them for the first time on appeal. See *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 716–17.

## IV

The plaintiff's final argument is that the court improperly failed to find that, despite the difference in title, lots 26 and 27 had merged for zoning purposes.[9] We disagree.

---

[8] General Statutes § 8-13a (a) provides: "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."

[9] As presented by the plaintiff's counsel, this claim may be academic. At oral argument, he stated that there are procedures in the Milford zoning regulations for an owner of merged properties to "basically separate them,"

Merger occurs in two situations. In the absence of a change in the zoning provisions, merger is determined by a party's intent to treat multiple lots as a single property. *Johnson* v. *Board of Zoning Appeals*, 35 Conn. App. 820, 826–27, 646 A.2d 953 (1994). Additionally, as in Milford, merger may be found to exist by operation of law, where a town changes zoning ordinances to implicitly or explicitly merge nonconforming lots with contiguous land owned by the same owner. *Molic* v. *Zoning Board of Appeals*, supra, 18 Conn. App. 164; *Neumann* v. *Zoning Board of Appeals*, 14 Conn. App. 55, 60, 539 A.2d 614 (merger doctrine adopted by implicit zoning change), cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988). "Once merged, the lots form one lot that meets or more closely approximates the zoning requirements and the separate lots lose their exception for nonconformance." *Johnson* v. *Board of Zoning Appeals*, supra, 826.

In 1988, § 6.4.2 (3) of the zoning regulations simply proscribed the granting of a special exception if a lot's identity had merged with an adjoining one. In the 1989 amendments to § 6.4.2, the merger description was greatly expanded. Section 6.4.2 (3B) now expressly provides in relevant part that whether a property's "identity as a separate lot has ceased and it has merged with the adjacent property is a factual determination to be made on a case by case basis upon the facts and circumstances of each individual application. Therefore, no fixed set of criteria can be said to establish such a merger for all cases. . . . " Subsection 3B further provides several illustrations of facts that may be indicative of a merger, and subsection 3C lists factors that are not themselves sufficient evidence of merger.

allowing even a merged lot to be built on. The problem in this case, the plaintiff argues, is that Stevens did not apply under the correct zoning provision.

The owner's intent under the common law to merge lots is inferred from his or her conduct with respect to the land and the use made of it. *Molic* v. *Zoning Board of Appeals*, supra, 18 Conn. App. 164. No single factor is dispositive. See *Marino* v. *Zoning Board of Appeals*, 22 Conn. App. 606, 610, 578 A.2d 165, cert. denied, 216 Conn. 817, 580 A.2d 58 (1990), citing *Molic* v. *Zoning Board of Appeals*, supra, 164. Thus, there is no merger simply because the tracts are taxed as one or even because the owner fails to take any actions physically to demonstrate that he desires to keep them separate. Id.; see also *Schultz* v. *Zoning Board of Appeals*, 144 Conn. 332, 337, 130 A.2d 789 (1957) (zoning board found no merger even though property had "never, in the chain of title up to the time of its conveyance to the plaintiff, been transferred as a separate lot and had never been assessed as such for taxation"). Those factors may, however, be considered probative by a zoning board in making its determination whether the properties have been merged. *Marino* v. *Zoning Board of Appeals*, supra, 609.

Generally, merger is found where the adjacent tracts have been used as a single property over a long period, even where the deed description references multiple lots from a map filed in the land records. See, e.g., id. (upholding zoning board determination that merger occurred where property was developed in 1920 as single parcel and used that way since); *Neumann* v. *Zoning Board of Appeals*, supra, 14 Conn. App. 57–58 (upholding zoning board determination of merger where separate houses on adjacent lots had been used as single parcel since 1953). The mere intent to develop the lots as a single property, however, does not automatically trigger the merger doctrine where the plan is rejected by the town; a developer could then submit plans to use the properties as separate lots. *Carbone* v. *Vigliotti*, 222 Conn. 216, 227–28, 610 A.2d 565 (1992). Once two

lots have merged, the merged lot cannot be redivided. *Iannucci* v. *Zoning Board of Appeals*, 25 Conn. App. 85, 90, 592 A.2d 970 (1991).

At the municipality level, only the zoning board of appeals has the authority to determine whether merger has occurred. Id., 88 (rejecting trial court conclusion that building inspector's issuance of permit to move house meant defendant town abandoned its merger finding).

The plaintiff argues that lot 26 was incorporated into lot 27 in 1969 when William Stevens submitted an application for a deck that listed the dimensions of his property as including both lots. Because neither the zoning board nor the court in this case addressed the matter of the 1969 deck or the applicability of the legal doctrine of merger or the illustrations in § 6.4.2 of the zoning regulations to lot 26, the plaintiff argues that those indicia of error require reversal of the judgment.

Stevens correctly responds that § 6.4.2 (3B) of the zoning regulations expressly provides that there is no fixed merger criteria and that reference to the lots as a single property to get a building permit is only one factor to be considered. She points to exhibits that she submitted in conjunction with her application, including the certificate of title, the lot 26 building plan, photographs, and separate tax bills and subdivision maps. In any event, she argues that the zoning board has the discretion to examine all of the surrounding circumstances.

The plaintiff's argument that the lots merged in 1988 fails for a more fundamental reason. From their creation in 1901 until 1994, the lots were under separate ownership. In addition to the provisions previously cited, merger applies to "*contiguous* substandard lots under *common ownership* . . . ." (Emphasis in original.) 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and

Planning (4th Ed. 1994) § 32.04; see also *Schultz* v. *Zoning Board of Appeals*, supra, 144 Conn. 338; R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 53.6, p. 580 ("contiguous land *all owned by the same proprietor* does not necessarily constitute a single lot" [emphasis added]). Indeed, Connecticut courts have addressed the merger doctrine only where the same parties own or have owned both properties.[10]

Accordingly, absent a showing that a party originally owned adjacent lots and transferred one solely to avoid merger by a newly enacted zoning change; see *Corsino* v. *Grover*, 148 Conn. 299, 170 A.2d 267 (1961);[11] formerly conforming lots cannot later merge without unity of

---

[10] See, e.g., *Carbone* v. *Vigliotti*, supra, 222 Conn. 216; *Dowling* v. *Zoning Board of Appeals*, 187 Conn. 689, 447 A.2d 1172 (1982); *Bankers Trust Co.* v. *Zoning Board of Appeals*, 165 Conn. 624, 345 A.2d 544 (1974); *Jenkins* v. *Zoning Board of Appeals*, 162 Conn. 621, 295 A.2d 556 (1972); *Schultz* v. *Zoning Board of Appeals*, supra, 144 Conn. 332; *Miller* v. *Zoning Board of Appeals*, 36 Conn. App. 98, 647 A.2d 1050 (1994); *Johnson* v. *Board of Zoning Appeals*, supra, 35 Conn. App. 820; *Bell* v. *Zoning Board of Appeals*, 27 Conn. App. 41, 604 A.2d 379 (1992); *Iannucci* v. *Zoning Board of Appeals*, supra, 25 Conn. App. 85; *Marino* v. *Zoning Board of Appeals*, supra, 22 Conn. App. 606; *Horn* v. *Zoning Board of Appeals*, 18 Conn. App. 674, 559 A.2d 1174 (1989); *Molic* v. *Zoning Board of Appeals*, supra, 18 Conn. App. 159; *Neumann* v. *Zoning Board of Appeals*, supra, 14 Conn. App. 55; *Torsiello* v. *Zoning Board of Appeals*, 3 Conn. App. 47, 484 A.2d 483 (1984).

[11] Our Supreme Court's conclusion in *Corsino* v. *Grover*, supra, 148 Conn. 299, regarding the transfer of lots in the face of a zoning change is in accordance with cases from a neighboring jurisdiction. See, e.g., *Sorenti* v. *Board of Appeals*, 345 Mass. 348, 187 N.E.2d 499 (1963) (transfer of adjacent lot to "straw" purchaser one day before zoning bylaw change); *DiStefano* v. *Stoughton*, 36 Mass. App. 642, 634 N.E.2d 584 (1994) (transfer of adjacent lots in "checkerboard" arrangement sixteen days before more restrictive zoning change); *Planning Board* v. *Serena*, 27 Mass. App. 689, 542 N.E.2d 314 (1989) (transfer of adjacent lot to trust controlled by owner four days before zoning bylaw change), aff'd, 406 Mass. 1008, 550 N.E.2d 1390 (1990). Recently, however, the Massachusetts Appeals Court interpreted those same cases for the proposition that whether a common party has "control" of both parcels is the key inquiry, regardless of title. See *Preston* v. *Board of Appeals*, 51 Mass. App. 236, 744 N.E.2d 1126 (2001). That case concerned an interpretation of a state statute, not common-law merger. In any event, we hold that merger requires unity of title.

title. That is true regardless of whether the parties are related. See, e.g., *Barkus* v. *Kern*, 160 App. Div. 2d 694, 696, 553 N.Y.S.2d 466 (1990) ("mere fact that the petitioners are related, either by blood or by marriage, is not dispositive of the issue"); *Stenzler* v. *Commerdinger*, 50 Misc. 2d 235, 237–38, 269 N.Y.S.2d 865 (1966) (no merger between wife's lot, adjacent lot held by husband even though lots purchased at same time and husband financed wife's purchase); *Barbara Homes, Inc.* v. *Michaelis*, 14 Misc. 2d 620, 621–22, 178 N.Y.S.2d 543 (1958) (no merger where one lot held by tenancy in entirety, adjacent lot by one spouse alone).

In addition to the separate titles, the record shows that Stevens and her husband purchased the lots at the same time and originally put them in separate ownership. The properties remained that way until the transfer of property in 1994. The zoning board reasonably could find on that basis and from other factors that the Stevenses did not intend to merge their properties. Furthermore, as previously noted, seven other lots of the twenty-three in the area have the same frontage as does lot 26; all have houses on them. See 83 Am. Jur. 2d, Zoning and Planning § 185 (1992) ("requirement that adjacent substandard lots be merged may be unreasonable if the lots are the same size as most other lots in the area").

The judgment is affirmed.

In this opinion the other judges concurred.