[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is a real estate tax appeal by the plaintiff, Philip J. Nargi, from the denial of his claim before the Waterbury Board of Assessment Appeals that his property located at 100 Grand Street, Waterbury was overvalued for tax purposes by the assessor for the City of Waterbury (City) on the grand lists of October 1, 1995, 1996, 1997, 1998, 1999 and 2000. The plaintiff claims that the assessor, beginning on the grand list of October 1, 1995, over assessed 100 Grand Street at $324,500, which represents a fair market value of $463,570.
Although the plaintiff has taken this appeal pursuant to General Statutes § 12-117a claiming that the subject property was overvalued by the assessor, the plaintiff further claims that there exists special circumstances that warrant an interim revaluation. CT Page 2762
The City denies that the subject property was overvalued by the assessor and interposes a special defense of collateral estoppel claiming that a prior owner of the property was successful in obtaining a reduction in the valuation of the subject property from the Board of Assessment Appeals on the grand list of October 1, 1983 and failed to appeal that decision to the superior court.
100 Grand Street is a four story structure of wood beam construction, originally built in 1845 as a bank but joined together with multiple buildings over the years. The building is located in the central business district of Waterbury at the intersection of Bank and Grand Streets. The subject contains a total of 21,932 square feet of gross building area and is located across the street from a ramp garage and the U.S. Post Office. The subject is located near City Hall, and is about one block from the courthouse at 300 Grand Street. The building consists of a mix of ground floor retail space with office space on the upper floors. The subject property was last revalued on the October 1, 1980 grand list at a fair market value of $335,000, which translates into a 70 percent assessed value of $234,500. In 1982, a prior owner, Ralph Carpinella, purchased the subject property for $250,000, although the assessor's street card shows a purchase price of $335,000. Carpinella gutted the second and third floors, making office suites in the building. Carpinella added new stairs, an elevator, two boilers to heat the building and redid the plumbing and the common bathrooms. These improvements, which cost approximately $100,000, caused the assessor to increase the assessment on the 1983 grand list to $444,500, or a fair market value of $635,000. Carpinella appealed the increase to the then Board of Tax Review, which reduced the fair market value to $463,570 and the assessment to $324,500 on the October 1, 1983 grand list. Carpinella sold the subject to Gary Bellard and V. James Ferraro on July 2, 1987 for $1,200,000, although the assessor's street card lists the purchase price at $1,340,000. The sale to Bellard and Ferraro in 1987 was at the height of the real estate market. The plaintiff acquired title on August 22, 1995 by quit claim deed from AMBA Realty Corporation for $172,000. (Plaintiff's Exhibit A.) At the time that the plaintiff purchased the property in 1995, the property was vacant except for one tenant and was in a state of disrepair, needing both cosmetic work and repairs necessary to bring the building up to fire code requirements. Nargi expended approximately $80,000 for repairs, doing much of the work through his own construction company.
The plaintiff's basic claim is that the City should have conducted a revaluation of property in Waterbury ten years after the 1980 revaluation, which would have been on October 1, 1990; therefore, his property should be valued based upon on the fair market value of the CT Page 2763 property as of October 1, 1990, not October 1, 1980. It is well recognized that the periodic revaluation of municipal property is governed by statute and the responsibility for this periodic revaluation is upon the assessor. State ex rel. Eastern Color Printing Co. v. Jenks, 150 Conn. 444,450-51, 190 A.2d 472 (1963).
Waterbury has a history of resisting the legislative mandate to periodically revalue municipal property in the state of Connecticut. SeeState ex rel. Eastern Color Printing v. Jenks, supra, 150 Conn. 444;Chamber of Commerce of Greater Waterbury, Inc. v. Murphy, 179 Conn. 712,427 A.2d 866 (1980). The last revaluation in Waterbury took place over twenty years ago, on October 1, 1980. This case arises from an appeal from the action of the Board of Assessment Appeals rejecting Nargi's claim that his real estate was overvalued on the list of October 1, 1980. The only issue before the court in this tax appeal is the "ascertainment of the true and actual value of the [taxpayer's] property." Torres v.Waterbury, 249 Conn. 110, 117, 733 A.2d 817 (1999). It is not within this court's authority in a tax appeal to either order the assessor to revalue the plaintiff's property or to itself determine the value of the plaintiff's property as of a date that is different from the City's last revaluation date. See Chamber of Commerce of Greater Waterbury, Inc. v.Murphy, 179 Conn. 719-20. The special circumstances alluded to by the plaintiff do not provide the authority to the court to determine the value of the property on a date other than the actual revaluation date of October 1, 1980, or to order the assessor to revalue the property as of a date different from that set by the legislature. "The only circumstances provided by statute that require an assessor to conduct an interim revaluation of a property are: (1) damage to a property requiring complete demolition or total reconstruction; General Statutes § 12-64a; and (2) new construction completed on the property. General Statutes § 12-53a." (Emphasis in original.) DeSena v. Waterbury, 249 Conn. 63,74-5, 731 A.2d 733 (1999).
Before considering the merits of the plaintiff's appeal, we must address the City's special defense that the plaintiff is collaterally estopped from bringing this appeal because a prior owner was successful in his appeal to the Board of Tax Review, and failed to take an appeal from that decision, making the Board's decision final.
Collateral estoppel, or issue preclusion, "`prevents a party from relitigating an issue that has been determined in a prior suit.'" LaurelBeach Assn. v. Zoning Board of Appeals, 66 Conn. App. 640, 648,___ A.2d ___ (2001), quoting Dowling v. Finley Associates, Inc.,248 Conn. 364,373, 727 A.2d 1245 (1999). Issue preclusion expresses the fundamental principle "that once a matter has been fully and fairly litigated and finally decided, it comes to rest." (Internal quotation marks omitted.) CT Page 2764Laurel Beach Assn. v. Zoning Board of Appeals, supra, 66 Conn. App. 648. The City presents the specific issue in this case as "whether or not an administrative body's decision becomes final when the taxpayer fails to seek timely judicial review of that body's decision. " (Defendant's trial brief, p. 12.)
The concept of collateral estoppel is founded on the principle that once an issue has been litigated in our judicial system, it may not be re-litigated. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between parties in any future lawsuit." (Citations omitted; internal quotation marks omitted.) Gladysz v. Planning Zoning Commission,256 Conn. 249, 260, 773 A.2d 300 (2001).
The City relies on a superior court decision to support its contention that collateral estoppel is a proper defense in this case. In Reynoldsv. Northeast Nuclear Energy Co., Superior Court, judicial district of Hartford, Docket No. 94 0541440 (October 15, 1997) (20 Conn.L.Rptr. 683), the plaintiff filed a complaint with the United States Department of Labor alleging retaliatory discharge and discipline by his employer. The complaint was heard by an administrative law judge (ALJ), who conducted a ten day hearing in which the parties were given an opportunity to present witnesses, documents and oral arguments. The ALJ rendered a decision in favor of the employer, and the decision was affirmed by the Administrative Review Board as being factually and legally sound. The plaintiff in Reynolds subsequently brought suit in superior court pursuant to state law, which provides basically the same protection to an employee as the federal law. The court, Teller, J., concluded that there was a former judgment on the merits on the same issues and between the same parties. "Because the ALJ conducted a ten day hearing, in which the parties were allowed to present their witnesses, documentary evidence, oral arguments and briefs, and because the nature of that hearing did not carry any procedural limitations that would not be present at a later hearing, it is evident that the plaintiff had a full and fair opportunity to litigate the issue . . . and therefore, collateral estoppel applies." Id. This decision does not convince us that the doctrine of collateral estoppel should be invoked in this tax appeal to bar the plaintiff from litigating the merits of his appeal.
One of the statutory functions of the Board of Tax Review, now called the Board of Assessment Appeals, is to determine appeals taken by taxpayers claiming to be aggrieved by the action of the assessor. General Statutes § 12-111. In performing this function, the Board acts as an CT Page 2765 administrative board, not a judicial tribunal and in performing its duties "it acts largely upon the knowledge of its members as to valuations and as to the taxable property of the taxpayers." Bugbee v.Putnam, 90 Conn. 154, 158, 96 A. 955 (1916). See also Burritt MutualSavings Bank v. New Britain, 146 Conn. 669, 674-75, 154 A.2d 608 (1959). The proceedings before the Board of Assessment Appeals and its predecessor, Board of Tax Review, were not proceedings in a court of law. In support of its collateral estoppel claim, the City presented the testimony of the previous owner, Carpinella, who testified that he appeared before the Board, presented an appraisal report, and received a reduction in the property's value. However, the City presented no evidence that appeals before the Board in general, and Carpinella's appeal in particular, involved the presentation of evidence in a contested setting, so as to support a finding that the issue of valuation was "fully and fairly litigated." We therefore find that the City has not met its burden of proving its special defense of collateral estoppel. The Board's 1983 decision to lower the assessment, and Carpinella's choice not to appeal that decision, do not preclude the plainitff from appealing to the Board of Assessment Appeals and then filing this appeal of the Board's decision. We conclude that the prior owner's appeal to the Board of Tax Review is not a final judgment of a litigated matter, and therefore cannot provide a basis to invoke the defense of collateral estoppel.
On October 1, 1980, the City assessor determined that the subject property had a fair market value of $335,000 and an assessment of $234,500. As we previously noted, Carpinella, the former owner, made substantial improvements to the subject property in 1982. Based on these improvements, the assessor increased the fair market value of the property to $635,000, which resulted in an assessment of $444,500 on the October 1, 1983 grand list. The Board of Tax Review lowered this assessment to a fair market value of $463,571 and an assessed value of $324,500 on the October 1, 1983 grand list.
The plaintiff's appraiser, Robert J. Nocera, determined the highest and best use of the subject property to be its present mixed retail and office uses. We agree with this analysis. Nocera utilized only the sales approach to determine the value of the property. Nocera considered the cost approach to be inappropriate because of the age of the subject building and did not use the income approach due to a lack of rents comparable to the subject property and speculative capitalization data. Nocera relied upon five sales that he considered comparable to the subject. The City's appraiser, Armand Carbone, considered four comparable sales ranging from a sale price of $250,000 to $475,000 during the period from 1977 to 1979. Two of Carbone's comparables, 68-70 Bank Street and 59 Field Street, were also two of the five comparables used by Nocera. CT Page 2766
Nocera was of the opinion that the valuation of the subject property should be a retrospective appraisal from the condition of the subject in 1995 to the revaluation date of October 1, 1980. Carbone was of the opinion that the valuation of the subject should be a retrospective appraisal from 1983 to October 1, 1980. We agree with both appraisers that the key date for determining the value of the subject is its fair market value on October 1, 1980. However, in 1982-83, the property was substantially improved by Carpinella, including the installation of a new elevator. The assessor, pursuant to General Statutes § 12-53a, increased the assessment of the subject for the new construction as of October 1, 1983. Section 12-53a requires that the assessor "shall determine the increment by which assessment for the completed construction exceeds the assessment on the taxable grand list for the immediately preceding assessment date." In other words, the value of the construction in 1982-83 must be based upon the construction costs as of October 1, 1980, not on October 1, 1983, in order to equalize the assessment with other City properties as of the last revaluation date. Since the valuation of the subject should include the improvements made by Carpinella, we find that the most comparable sales should be sales of property closest to the October 1, 1980 revaluation date containing improvements similar to those made to the subject property in 1982-83 by Carpinella. Cf Desena v. Waterbury, supra, 249 Conn. 74-75. The factors that should be considered in selecting comparables to the subject are sales at or about the revaluation date, which have "market conditions at the time of sale, size, location, physical features, and, if the properties produce income, economic characteristics." Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992), p. 367.
Nocera's first comparable sale, 170-192 Grand Street in Waterbury, was a sale on June 27, 1980 of land and buildings approximately twice the size of the subject property. This property contained four separate buildings, and sold for $350,000. The property was renovated in 1980-81 to add improvements valued at $600,000, making an effective purchase price for Nocera's sale one of $950,000. We find that even though Nocera's comparable sale one is located close to the subject property, there are too many dissimilarities, such as its size and number of buildings, to make it truly comparable to the subject property.
Nocera's comparable sales two and three were sales of land and buildings in close proximity to the subject property but half the size of the subject. Sale two was for $115,000, and sale three was for $70,500. Except for location, we do not find these sales to be helpful in determining the fair market value of the subject.
Nocera's fourth comparable, 70 Bank Street, Waterbury, sold for CT Page 2767 $250,000 on September 6, 1979. This sale was one half the land size of the subject, but the building size contained 16, 168 square feet of building area. This building, like the subject building, contained a passenger elevator with a retail store front on the street level and offices on the upper floors. Carbone also selected this sale as a comparable.
Nocera's sale five, 59 Field Street, Waterbury, was also selected as a comparable by Carbone. 59 Field Street was in a Residence-Office (RO) zoning district but, like the subject, was on the edge of the central business district. This sale occurred on September 26, 1979 with a sale price of $295,000. This property was located across the street from the subject. The building contained 14,000 square feet of building area, and was a free standing building in better condition than the subject. However, this building had no elevator.
Nocera's adjusted sale price for his fourth comparable, 70 Bank Street, was $15.92 per square foot of gross building area. Nocera's adjusted sale price of his fifth comparable, 59 Field Street, was $19.45 per square foot of gross building area. Carbone's adjusted sale price of 70 Bank Street was $17.60 per square foot of gross building area, and his adjusted sale price for 59 Field Street was $27.31 per square foot of gross building area.
After a review of the sales of 70 Bank Street and 59 Field Street, and the analysis of these sales by Nocera and Carbone, we find that the value of the subject, on a per square foot basis, is closer to the adjusted sale price of 70 Bank Street. However, since both appraisers relied on 59 Field Street to give balance to their analysis, we find that $18 per square foot of gross building area is representative of the fair market value of the subject property as of October 1, 1980, including the improvements made in 1982-83. Multiplying the gross building area of the subject property, 21,932 square feet, by $18 per square foot results in a fair market value of $394,776. Since the Board determined that the value of the subject property was $463,571 as of October 1, 1980, our determination of value results in a finding that the property was overvalued by the assessor on the list of October 1, 1980 and, therefore, the plaintiff is aggrieved by the decision of the Board. SeeIreland v. Wethersfield, 242 Conn. 550, 558, 698 A.2d 888 (1997).
Accordingly, we find that the fair market value of the subject property on the grand list of October 1, 1980, as improved in 1982-83, was $394,776. Judgment may enter in favor of the plaintiff without costs to either party.
Arnold W. Aronson CT Page 2768 Judge Trial Referee