[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S APPEAL FROM DECISION OF THE ZONING BOARD OF APPEALS OF THE TOWN OF TRUMBULL
 STATEMENT OF THE CASE
The Plaintiff, John P. Rackliffe,[1] appeals from the decision of the defendant, the zoning board of appeals of the town of Trumbull (ZBA), denying the plaintiffs application to reverse the issuance of a building permit to the defendant, Herde Construction, Inc. (Herde), for the construction of a single family home on Lot 6, Canoe Brook Road, in Trumbull, Connecticut. The plaintiff brings this appeal pursuant to General Statutes § 8-8.
On May 21, 1948, a subdivision map, "Map' A' of Canoe Brook Lake," was-recorded in the office of the Trumbull town clerk. (Return of Record (ROR), Item 4-b.) The map depicts a subdivision consisting of six lots of approximate equal size. (Id.) Lots 1 through frontage onto Madison Avenue. Lot 6, which is the subject of this appeal, abuts the rear portion of Lots 1 and 2 and has frontage on Dayton Road.
In 1950, Charles Barnes purchased Lot 1. (ROR, Item 4-a, p. 1.) In 1952, Earle and Betty Anderson purchased Lot 2 and a portion of Lot 3. (ROR, Item 4-a, p. 3.) By separate warranty deeds dated November 29, 1958, Charles Davidow, president of C.B. Lake Company, conveyed the southerly portion of Lot 6 abutting the Andersons' property to the Andersons and the northerly portion of Lot 6 abutting Barnes' property to Barnes. (ROR, Item 4-a, pp. 13-14.) In a strawman transaction dated September 1, 1988, the Andersons and Barnes quit claimed their respective interests in Lot 6 to Joanne Cockerill who, on the same day, quit claimed the entire lot back to Barbara Barnes and Betty Anderson as joint tenants. (ROR, Item 4-a, pp. 10-12.)
On April 25, 1996, Donald Murray, building official and zoning enforcement officer for the town, issued a building permit to Herde, Sue CT Page 13493 Coyne[2] and Betty Anderson for the construction of a nine room residence on the lot. Thereafter, on May 6, 1996, Herde purchased the lot from Coyne and Anderson. On or about May 10, 1996, the plaintiff appealed from the zoning enforcement officer's issuance of the building permit to the ZBA, which denied the plaintiffs appeal on August 20, 1996.
Presently before the court is the plaintiffs appeal of the August 20, 1996 decision of the ZBA denying his appeal of the issuance of the building permit. As grounds for the appeal, the plaintiff alleges that the ZBA acted illegally, arbitrarily and in abuse of its discretion in the following ways: (1) Lot 6, which is approximately .3 acres, is in a zone which has a minimum building lot requirement of not less than one acre; (2) The ZBA's decision established Lot 6 as a valid preexisting nonconforming building lot in contravention to the provisions of Article 111, § 1[3] of the Trumbull zoning regulations and despite evidence that the lot had been divided and incorporated into two adjoining parcels in 1952; (3) the ZBA ignored the fact that the 1988 sale to Cockerill increased the nonconformity of Lots 1 and 2 in violation of Article I, § 3-C3[4] and Article III, § 2-D4[5] of the town regulations; and (4) the ZBA's decision violated Article I, § 3-D[6]
of the town regulations by allowing the reestablishment of a nonconforming building lot. (Appeal, ¶¶ 10 (a)- (f).)
 JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-a-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
 Agrievement
On July 2, 2002, the court heard evidence on the issue of aggrievement and found that Rackliffe, had met his burden of proof that as the owner of property that abuts the subject property, he was statutorily aggrieved by the board's decision and therefore entitled to maintain this appeal. "In the case of a decision by a . . . planning and zoning commission . . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a) (1); see generally, Harris v. Zoning Commission, 259 Conn. 402, 409, 788 A.2d 1239
(2002); Quarry Knoll II Corp. v. Planning Zoning Commission,256 Conn. 674, 701, 780 A.2d 1 (2001). CT Page 13494
 Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the ZBA's decision was sent to the plaintiffs by certified mail with an effective date of August 20, 1996. (ROR, Item 12.) The present appeal was commenced by service of process upon Joan Gruce, clerk of the zoning board of appeals, Linda Lungi, town clerk of the town of Trumbull and Andre Nagy, agent for service of process for Herd Construction, Inc., on September 3, 1996. (Sheriffs Return.) Accordingly, the court finds that the plaintiffs filed a timely appeal upon the proper parties.
 SCOPE OF REVIEW
The standard of review of a decision by a ZBA with respect to the action of a ZEO is well established. "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82, 626 A.2d 744 (1993). The court must decide whether the regulation was "correctly interpreted" by the ZBA and applied "with reasonable discretion to the facts." Spero v. Zoning Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
Thus, the issue is only whether the defendant ZBA's decision was arrived at "fairly or with proper motives or upon valid reasons. . . ." (Internal quotation marks omitted.) Id. "In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty." Daughtersof St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56-57,549 A.2d 1076 (1988). Finally, "[i]n reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal CT Page 13495 discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal."Francini v. Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519
(1994). It is axiomatic that a plaintiff has the burden of proving that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49,55, 585 A.2d 703 (1991). The court's only role is to search the record to determine whether the ZBA's conclusion was reasonably supported by the record, and not to attempt to weigh the evidence or determine issues of fact. Farrington v. Zoning Board of Appeals, 177 Conn. 186, 190,413 A.2d 817 (1979).
 DISCUSSION
In its August 16, 1996 decision denying the plaintiffs appeal the board stated: "Pursuant to Article VI, Section 1 of the Zoning Regulations, your appeal from the issuance of a Building Permit . . . to construct a dwelling on Lot 6 Canoe Brook Road in violation of Art. III, Sec. 1 and Art. III, Sec. 2, par. D of the Zoning Regulations, is hereby DENIED . . . for reason that the Board found that sufficient facts were not presented to indicate that the Building Official acted improperly or that he had no right to issue the permit. The only issue was whether the property is shown on a map in the Town Clerk's office with Planning and Zoning approval; the fact that parts of the lot had been deeded away to two separate parties and put back together again through deed made no difference to those voting against sustaining the appeal." (ROR, Item #12.)
Article III, § I of the town zoning regulations provides, in relevant part, that "[n]o building or structure shall hereafter be occupied, erected . . . except in conformity with the regulations prescribed in this Article and in the schedule hereinafter set forth . . . except that the provision covering the minimum sizes of lots shall not prevent the construction of single family dwellings on non-conforming lots in separate ownership recorded in the office of the Town Clerk and duly approved by the Planning Commission, where such approval is required, prior to November 9, 1957; and provided that the owner of any such lot did not own sufficient adjoining land to enable such owner, without undue hardship to him, to conform with these regulations or to conform therewith to a greater degree. . . ."
Lot 6 is described and designated on Map "A" of Canoe Brook Lake, which was approved as a subdivision plan on May 21, 1948 by the Trumbull planning commission and recorded in the town land records on May 24, 1948. (ROR, Item #4b.) There is no allegation that the owner of Lot 6, CT Page 13496 C. B. Lake Company, owned sufficient adjoining land in 1957 so as to enable it to conform Lot 6 to the new regulations enacted that year pertaining to lot size. Indeed, the record indicates that at the time the new regulations were enacted, the lots on either side of Lot 6, Lots 1 and 2, had already been purchased by Barnes and by the Andersons' respectively. (ROR, Item #4a.)
The plaintiff argues, however, that Lot 6 lost its status as a preexisting nonconforming lot by virtue of its 1958 transfer, in separate parcels, to the Andersons and to Barnes. (Plaintiffs Brief, pp. 7-8.) Specifically, the plaintiff argues that "[l]ot 6 fails to satisfy the "separate ownership' requirement of Article III, Section 1 when, as is the case here, Lot 6 has been severed and made a part of two adjoining undersized residential lots. . . . The `separate ownership' test of the regulation is clearly a continuing requirement, with separate ownership status to continue until the building permit is sought. . . . Absent a continuing `separate ownership' requirement, pre-1957 undersized lots can be reassembled with impunity, contrary to the general principle of zoning that nonconforming uses should be abolished or reduced to conformity" (Plaintiffs Brief, pp. 7-8.)
The defendants counter that, in the absence of the filing of a resubdivision map, the 1958 transfer of title to Lot 6 in separate parcels to the Andersons and Barnes did not, in and of itself, extinguish the preexisting nonconforming status of the lot. (See Herde's Brief, pp. 8-9.) The court agrees with the defendants that there is sufficient evidence in the record to support this position and the ZBA's reliance on this position to reject the plaintiffs appeal ZEO's decision was not unreasonable, arbitrary or capricious.
"A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time the regulations are adopted." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 710, 535 A.2d 799 (1988). To be considered a nonconforming use, "[f]irst, [the use] must be lawful and second, it must be in existence at the time the zoning regulation making the use nonconforming was enacted." (Emphasis in original.) Cummins v. Tripp, 204 Conn. 67,91-92, 527 A.2d 230 (1987). A lot that is undeveloped when later zoning regulations are adopted, is not in use, and, therefore, not protected as a nonconforming lot. Miller v. Zoning Board of Appeals, 36 Conn. App. 98,105, 647 A.2d 1050 (1994). A lot is exempt, however, from changes in zoning regulations as a nonconforming lot, under General Statutes §8-26a (b)[7], if the property is part of a valid subdivision approved before the adoption of the new regulations. Id. CT Page 13497
The plaintiff cites no authority, nor has research produced any, to support his argument that the mere transfer of Lot 6 in separate deeds to two separate parties effectively severed Lot 6 into two separate lots which then merged with the adjoining lots. Indeed, under Connecticut law, "[m]erger occurs in two situations. In the absence of a change in the zoning provisions, merger is determined by a party's intent to treat multiple lots as a single property. . . . Additionally . . . merger may be found to exist by operation of law, where a town changes zoning ordinances to implicitly or explicitly merge nonconforming lots with contiguous land owned by the same owner." Laurel Beach Assn. v. ZoningBoard of Appeals, 66 Conn. App. 640, 653, 785 A.2d 1169 (2001).
There is no town regulation in the present action requiring nonconforming lots with contiguous land owned by the same owner to merge. Moreover, even if there were such a regulation, "formerly conforming lots cannot later merge without unity of title." Id., 656-57. Here, an examination of the deeds indicates that there was never unity of title between Lot 6 and Lots 1 or 2. The record instead reveals that at all relevant times to this appeal, Barnes owned Lot 1; the Andersons owned Lot 2; while Barnes and the Andersons together owned Lot 6.[8]
(ROR, Item 4-a, p. 1.)
The plaintiff argues, however, that there was unity of title between Lot 1 and the portion of Lot 6 that was purchased by Barnes and Lot 2 and the portion of Lot 6 that was purchased by the Andersons. Such an argument, however, presupposes that the transfer of Lot 6 in separate deeds to separate owners severed Lot 6 into two separate parcels or lots. Chapter II, § 2 (o) of the land subdivision regulations of the town of Trumbull, however, defines "subdivision" as including "any resubdivision of any existing subdivision where the lot lines of more than two lots, as shown on any map filed for record in the Town Clerk's Office will be altered thereby. . . ." Chapter III, § 1, in turn, provides that "[n]o subdivision of land shall be made unless the same shall have been submitted to and approved by the Commission."
It is undisputed that a resubdivision map for Canoe Brook Lake was never submitted to the Trumbull town planning commission for approval. Accordingly, the ZBA's decision that Lot 6 was a preexisting nonconforming building lot was not unreasonable, arbitrary or illegal and is supported by substantial evidence in the record. Indeed, "[a] decision of the board will be reversed only when the plaintiff has proven that the decision was unreasonable, arbitrary or illegal. . . . A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. Therefore, as long as honest judgment has been reasonably and fairly exercised at the CT Page 13498 local level, the trial court must not substitute its judgment for that of the zoning board. (Citations omitted.) New London v. Zoning Board ofAppeals, 29 Conn. App. 402, 405, 615 A.2d 1054 (1992).
The plaintiff further argues that the ZBA erred in not finding that Lot 6 merged with the Andersons' and Barnes' properties. As evidence of merger, the plaintiff emphasizes that the assessor's field card for the Andersons' property included the southerly portion of Lot 6 within its acreage as well as the fact that the Canoe Brook Lake Association map depicts the Andersons' lot as an L-shaped property, incorporating the portion of the former Lot 6. The plaintiff also refers to testimony at the hearing that the portions of Lot 6 that were deeded to the Andersons and to Barnes were made an integral part of each respective residential lot, which included mowing. (Plaintiffs Brief, pp. 9-10.)
Herde counters that there is no authority to support the plaintiffs position that Lot 6 merged with the Anderson and Barnes lots simply because the town taxed the Anderson parcel as one tract or because the owners took no action to physically maintain the two lots as separate. (Herde's Brief, p. 15.) The court agrees with this defendant's position.
"At the municipality level, only the zoning board of appeals has the authority to determine whether merger has occurred." Laurel Beach Assn.v. Zoning Board of Appeals, supra, 66 Conn. App. 655. "An owner of contiguous parcels of land may merge those parcels to form one tract if he desires to do so. An intent on the part of the owner to do so may be inferred from his conduct with respect to the land and the use which he makes of it. That is not to say that he must be deemed to have done so on the facts of this case. Intent is a question of fact. . . ." Molic v.Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 A.2d 1049 (1989).
At the June 5, 1996 hearing on the plaintiffs appeal, the ZBA heard testimony on the merger issue. Rackliffe testified: "I have several documents that were left with me when I bought my house in 1990 from the Andersons. They . . . ah, more than legality they show intent, I think . . . One is an appraisal of my house that was done in 1988. The appraiser went in, apparently to the Town Hall, looked up records and came back stating that my lot was "L" shaped, .6 acres. The dimensions then subsequently hand crossed out and the smaller dimension of .46 written in. . . . There is also a copy of an old Canoe Brook Lake map that Mr. Anderson left with me when I bought the house. It's not an official map. It's not a Town document but it shows 4450 and 4454 as separate lots with these small portions attached to the back and no mention, no indication of lot 6. There is also a copy of my property tax record. I'm sure the tax department didn't see lot 6 for 30 years. They didn't tax lot 6 for CT Page 13499 30 years. They taxed a small addition to Mr. Anderson's property and a small addition to Mr. Barnes' property. . . ." (ROR, Item #4, p. 9.) Rackliffe further testified: "As far as usage, both portions were used as extensions of the previous owner's lots. I continue to mow about a 10 X 60' section of this lot, so called "lot" in question. It was used by Mr. Anderson for 30 years as his backyard." (Id., p. 10.)[9]
As previously noted, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board. See New London v. Zoning Board of Appeals, supra, 29 Conn. App. 405. In the present appeal, there is sufficient evidence in the record to support the ZBA's factual determination that no merger occurred between Lots 1, 2 and 6. In addition to the fact that a resubdivision map was never filed for the lots, there was also the corroborating evidence from Anderson, attesting that it was never his or Barnes' intention to abandon the status of Lot 6 as a building lot. (ROR, Item 4f, p. 14.)
Finally, the plaintiff argues that the ZBA's decision violated Article I, §§ 3 (C) and (D) and Article III, § 2 (D) of the town zoning regulations. Article I, § 3 (C) provides: "Any nonconforming use, building, structure or premises hereafter changed to conform with the requirements of these regulations shall become subject to these regulations and shall not be thereafter permitted or re-established as non-conforming." The plaintiff argues that the 1988 conveyance of Lot 6 to Cockerill violated Article I, § 3 (C) because it made Lots 1 and 2 more nonconforming. (Plaintiffs Brief, pp. 11-12.)
"The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation. . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning. . . . [W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [D]oubtful language will be construed against rather than in favor of a [restriction]. . . ." (Citation omitted; internal quotation marks omitted.) Farrior v. Zoning Board of Appeals, 70 Conn. App. 86, 89-90,796 A.2d 567 (2002).
Assuming, arguendo, that the 1958 conveyance of Lot 6 in separate parcels and in separate deeds to Barnes and to the Andersons had the CT Page 13500 effect of making Lots 1 and 2 larger, there is no evidence that the conveyance actually caused the two lots "to conform to the requirements" of the town. As previously noted, one acre of land was required in 1958 in order to build a house. The record reveals that Lot 2, together with the portion of Lot 6 purchased by the Andersons, totaled .6 acres. (ROR, Item #4, p. 9.)
"Since zoning regulations are in derogation of common law property rights . . . the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms." Farrior v. Zoning Board of Appeals, supra, 70 Conn. App. 89-90. Article I, § 3 (C) provides in relevant part that where "[a]ny nonconforming use, building, structure or premises hereafter changed to conform with the requirements of these regulations shall become subject to these regulations." (Emphasis added.) It does not state that any non-conforming use hereafter changed to be "more conforming" with the requirements of these regulations shall become subject to these regulations. Accordingly, because restrictions upon the land are not to be extended to include by implication that which is not expressly within their provisions, the plaintiffs appeal will not be sustained on the grounds that the ZBA decision violated Article I, § 3 (C).
The plaintiffs argument that the decision violated Article III, § 2 (D) is similarly without merit. Article III, § 2 (D) provides: "No lot shall be so reduced in area by sale, subsequent subdivision or otherwise, in such a manner that a conforming lot is made non-conforming with respect to minimum area or in such a manner that any yard or other open space shall be smaller than is prescribed in these regulations for the zone in which it is located." As previously noted, there is no evidence in the record that any of the conveyances described heretofore had the effect of making a once conforming lot non-conforming.
Finally, the plaintiff argues that the decision violated Article I, § 3 (D) of the town regulations. Section 3 (D) provides: "When a non-conforming use shall have been discontinued for a continuous period of 180 days, such non-conforming use shall not thereafter be resumed or replaced by any other non-conforming use and any building or premises which is non-conforming or is used for a non-conforming use and which is likewise not used for such non-conforming use for a continuous period of 180 days, shall thereafter be used in conformity with these regulations." For the reasons previously discussed, the ZBA's determination that Lot 6 was never abandoned as a valid preexisting non-conforming lot was not contrary to law and was supported by substantial evidence in the record. CT Page 13501
 CONCLUSION
For the foregoing reasons, judgement shall enter in favor of the defendants and the plaintiffs appeal is dismissed.
So ordered the 24th day of October 2002.
 ________________ Stevens, J.