[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S APPEAL FROM DECISION OF THE ZONING BOARD OF APPEALS OF THE TOWN OF STRATFORD
 STATEMENT OF THE CASE
The plaintiff, Joseph Woznicki, appeals from the decision of the defendant, the Stratford board of zoning appeals, denying his application for a variance.
On January 29, 2001, Joseph Woznicki submitted an application to the Stratford board of zoning appeals (board) seeking a variance for a certain lot, denominated lot 44 on map B of Oscar Swanson, dated 1915.[1]
(Return of Record [ROR], Item 1.) Seeking to build a single-family residence, the plaintiff sought a variance from § 4.2 of the zoning regulations to reduce the square footage requirements for lot 44 from 7,500 square feet to 5, 000 square feet and the lot width requirements from 60 feet to 50 feet.[2] (ROR, Item 3.) On June 5, 2001, after public comment and deliberation, the board voted 3-2 to deny the petition. (ROR, Item 29, June 5, 2001, Minutes.) On June 12, 2001, the board's decision was published in The Connecticut Post. (ROR, Item 9.)
On June 22, 2001, the plaintiff commenced this appeal by serving both the chairman of the board and the Stratford town clerk.
 JURISDICTION
General Statutes § 8-8 governs an appeal from a decision of a zoning board of appeals denying a petition for a variance. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Cardoza v. Zoning Commission, 211 Conn. 78, 82,557 A.2d 545 (1989). CT Page 14095
 Aggrievement
General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." There is no dispute that the plaintiff is the record owner of the premises subject to the variance decisions at issue, and therefore, in turn the court finds that the plaintiff has a specific, personal and legal interest in the subject matter of the decision for purposes of aggrievement. See Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991); see generally,Harris v. Zoning Commission, 259 Conn. 402, 409, 788 A.2d 559 (2002). The court further finds that based on the record presented, the appeal was timely commenced by service on the proper parties.
 SCOPE OF REVIEW
Pursuant to General Statutes § 8-6 (a)(3), a zoning board of appeals may "Vary the application of the zoning . . . regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured."[3]
"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. . . . Variances cannot be personal in nature, and may be based only upon property conditions. . . . In fact, we have stated that [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Citations omitted; internal quotation marks omitted.) Reid v. Zoning Board of Appeals,235 Conn. 850, 857, 670 A.2d 1271 (1996). In addition, a variance must not adversely affect the municipality's comprehensive zoning scheme or plan. Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368, 537 A.2d 1030
(1988). CT Page 14096
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court." (Internal quotation marks omitted.) Bloom v. Zoning Boardof Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995).
A plaintiff has the burden of proving that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. PleasantView Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 586 A.2d 1372 (1991).
The zoning board of appeals in this case did not formally state the reasons for its decision, and therefore, the trial court must search the record to determine whether the board acted arbitrarily, illegally or unreasonably. Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 743, 626 A.2d 705 (1993).
 DISCUSSION
The plaintiff appeals on the ground that the board abused its discretion because it acted in an illegal, arbitrary and confiscatory manner. The plaintiff's specific claim is that strict adherence to the regulations imposed an undue hardship on him by not allowing the plaintiff to improve a preexisting, nonconforming lot, which is consistent with other uses in the immediate area, and that sufficient evidence was presented to demonstrate that the variance would not affect the comprehensive zoning plan as found in the zoning regulations.[4]
In support of his appeal, the plaintiff argues that lot 44 is a separate and distinct lot. The plaintiff therefore argues that lot 44 requires a separate variance in order to build a single family residence. In addition, the plaintiff argues that the application of the regulations would impose an undue hardship as it would deny the plaintiff the ability to build single family residences on lot 44 and that the application of the regulations would have a confiscatory and arbitrary effect because the plaintiff would be denied any use of the lot. Finally, the plaintiff argues that the variances would not affect the comprehensive zoning plan because many of the lots in the immediate area are of similar dimensions. CT Page 14097
The defendant's response is that lot 44 merged with lots 46 and 47, two adjacent lots owned by the plaintiff. Alternatively, the defendant argues that, even if the properties are not merged, the plaintiff fails to meet the two requirements for a variance. The defendant maintains that the plaintiff did not demonstrate an unusual hardship to justify the granting of a variance by merely showing that the regulations would prevent the plaintiff from building single family residences on the lots. Furthermore, the defendant argues that the application of the regulations did not have a confiscatory and arbitrary effect because lot 46 could still be used as a side yard for lot 47. Finally, the defendant contends that sufficient evidence was presented to show that the comprehensive zoning plan would be affected as neighbors testified that traffic and parking problems would be increased.
 I
First addressing the issue of merger, the plaintiff argues that the lots did not merge because he intended to keep the properties as separate and distinct parcels. Because the lots are separate and distinct, the plaintiff argues, a variance is needed to build one single family residence on lot 44.
"Merger occurs in two situations. In the absence of a change in the zoning provisions, merger is determined by a party's intent to treat multiple lots as a single property. . . . Additionally . . . merger may be found to exist by operation of law, where a town changes zoning ordinances to implicitly or explicitly merge nonconforming lots with contiguous land owned by the same owner. . . . Once merged, the lots form one lot that meets or more closely approximates the zoning requirements and the separate lots lose their exception for nonconformance." (Citations omitted; internal quotation marks omitted.) Laurel BeachAssn. v. Zoning Board of Appeals, 66 Conn. App. 640, 653, 785 A.2d 1169
(2001). "Once two lots have merged, the merged lot cannot be redivided." Id., 654-65.
"The owner's intent may be inferred from his conduct with respect to the land and the use which he makes of it. . . . Intent is an inference of fact and is not reviewable unless it was one which the trier could not reasonably make." (Citation omitted; internal quotation marks omitted.)Bell v. Zoning Board of Appeals, 27 Conn. App. 41, 46 n. 6, 604 A.2d 379
(1992). "Generally, merger is found where the adjacent tracts have been used as a single property over a long period, even where the deed description references multiple lots from a map filed in the land records." (Internal quotation marks omitted.) Laurel Beach Assn. v.Zoning Board of Appeals, supra, 66 Conn. App. 654. CT Page 14098
In Marino v. Zoning Board of Appeals, 22 Conn. App. 606, 578 A.2d 165
(1990), the court examined some of the factors that should be weighed when determining the intent of a property owner. In Marino, the court explained: "It is true that contiguous land owned by the same person does not necessarily constitute a single lot. . . . It is also true that the taxation of multiple parcels of land by the assessor's office as one tract does not compel a finding of merger. . . . This does not mean, however, that such factors may not be considered by the board as part of the evidentiary foundation to support a finding of merger if they are relevant and probative. While the fact that lots are contiguous and owned by the same person does not mandate a finding of merger . . . it is certainly a relevant factor. Further, the fact that the land was taxed as one parcel is relevant to a finding of merger in this case, where the record disclosed that the parcel in question had been taxed as one lot for the past fifty years." (Citations omitted.) Id., 609. The court also considered the existence of a driveway on a separate lot and the deed description as factors in its determination of whether there was a merger of the lots. Id., 609-10. Additionally, the court considered record evidence that revealed the lots had been developed as one single property. Id., 610. Based on the above factors, the court concluded that "[t]he record . . . reasonably supports a finding of merger." Id., 609.
In Iannucci v. Zoning Board of Appeals, 25 Conn. App. 85, 90,592 A.2d 970 (1991), the court considered the positioning of the residence with respect to the property line. In that appeal, the plaintiff owned two abutting lots, which he bought from his mother's estate. Id., 86. The parents had built a house that crossed the property line between the two lots. Id., 86. The plaintiff sought variances so that he could relocate the existing house onto one lot and build another house of the remaining lot. Id., 87. The court, when considering whether the two lots had been merged, noted that "[a] portion of the dwelling was later constructed over the property line and the position of the house was accurately noted on the survey map. . . ." Id., 90. The court concluded that: "[i]t was reasonable for the defendant to infer that the actions of the plaintiffs parents effectively merged the lots." Id., 90.
The record reveals that the plaintiff owned a single family residence located on lot 47. (ROR, Item 18.) In conjunction with this residence, an asphalt driveway located on lot 47 led to a garage and shed on lot 44. (ROR, Item 18.) Furthermore, the plaintiff constructed a fence that enclosed all. three lots, which allowed the plaintiff to use lots 44 and 46 as side yards for lot 47. (ROR, Item 18.) Moreover, the residence built on lot 47 was built very close to the property line of lot 46. (ROR, Item 18.) Finally, the zoning staff, itself, concluded that "one CT Page 14099 can consider the lots . . . merged by use." (ROR, Item 26, p. 10.) Although the board did not make an explicit finding that merger occurred, it is submitted that the board, based on the evidence before it, could reasonably have found that the lots were merged.[5]
As previously stated, whether a merger has occurred depends on the owner's intent, and intent may be inferred from the owner's conduct and the circumstances surrounding this conduct. This court cannot retry the evidence submitted to the agency and the court is solely charged with determining whether there is a legally sufficient basis in the record supporting the agency's decision. Although the board did not make an explicit finding that merger occurred, the court concludes that based on the evidence before the board, it could reasonably have found that the lots were merged.
 II
The plaintiff also appeals on the ground that the board's denial was arbitrary, illegal, and in abuse of its discretion because the zoning regulations, as applied, would produce an unusual hardship. Specifically, the plaintiff argues that the application of § 4.2 of the regulations would render lot 44 practically worthless because the lot would not be allowed to be improved in any way. Furthermore, the plaintiff argues, many of the residences in the immediate area are on similarly sized properties. The court agrees with the defendant's argument that the other lots in the area are subject to the same zoning regulations as the lots at issue here and that the board's decision does not create a hardship that is unusual.
"Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect." (Citations omitted; internal quotation marks omitted.) Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369,537 A.2d 1030 (1988). "It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district." (Internal quotation marks omitted.) Id., 373. CT Page 14100
The facts of Grillo v. Zoning Board of Appeals, supra, are similar to the facts presented in this appeal. In Grillo, the petitioner owned two contiguous lots, both of which failed to satisfy the frontage and area requirements of the local zoning regulations. Id., 363-64. As in the present appeal, a house was built on one lot, while the adjoining lot was used as a side yard. Id., 364. Furthermore, neither lot met the minimum area and frontage requirements of the local zoning regulations. Id. The board granted the variances of the petitioner and an abutting land owner appealed. Id., 363. On appeal, the petitioner argued that a denial of the variance would decrease the value of his property to such an extent that it would have created an unusual hardship. Id., 369. The court, however, rejected this argument, stating: "[T]here is no evidence that the vacant lot is unmarketable for its present use as a side yard enhancing the value of the adjoining . . . property or of other adjoining properties." The petitioner also argued that a denial of the variance would create an unusual hardship because "the vacant lot . . . has the same frontage and area as most of the other lots on the street." Id., 371-72. The court similarly rejected this argument, stating: "[I]t is difficult to perceive any distinction between [the petitioner's] hardship and that imposed on other owners. . . ." Id., 3 72-73.
As in Grillo, the return of record does not contain any evidence that lot 44 is unmarketable as a side yard for lot 47. Furthermore, the record reveals that many of the surrounding lots were of similar dimensions, thereby making them nonconforming under the regulations. (ROR, Item 14.) Nevertheless, the fact that similar lots in the area have single family residences is not enough to demonstrate that the board's denial resulted in an unusual hardship. Grillo v. Zoning Board of Appeals, supra,206 Conn. 372-73. Accordingly, the plaintiff has not met his burden with respect to this prong of the hardship test.
In addition, the plaintiff argues that the application of the zoning regulations would be confiscatory because the application of § 4.2 of the zoning regulations renders lot 44 practically worthless. The court concludes that the plaintiff has failed to meet his burden of proof that the board's decision is confiscatory because, as just explained, a property that is used as a side yard is not "practically worthless."
"[T]he determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . . Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on CT Page 14101 the ground of . . . unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect. . . . Zoning regulations have such an effect in the extreme situation where the application of the regulations renders the property in question practically worthless." (Citation omitted; internal quotation marks omitted.) Hoffer v. Zoning Board of Appeals, 64 Conn. App. 39,43-44, 779 A.2d 214 (2001).
"Proof of financial hardship having a confiscatory or arbitrary effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations." Grillo v.Zoning Board of Appeals, supra, 206 Conn. 370-71.
 III
Finally, the plaintiff argues that the granting of the variance would not affect the comprehensive zoning plan. Specifically, the plaintiff emphasizes that none of the other lots in the area exist in conformity with present day zoning regulations. The defendant fails to address this argument.
"The comprehensive plan is to be found in the scheme of the zoning regulations themselves." (Internal quotation marks omitted.) Adolphsonv. Zoning Board of Appeals, 205 Conn. 703, 713, 535 A.2d 799 (1988). The court may look to the purpose of the zoning regulations to determine the scheme of the zoning regulations. See, e.g., Venezia v. Fairfield ZoningBoard of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 365222 (April 26, 2001, Comerford, J.). Here, the purpose of the zoning regulations can be found in the preface, which provides in part: "[T]he zoning regulations of the Town of Stratford . . . are adopted in order to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements; to conserve the value of buildings and to encourage the most appropriate use of land throughout the Town of Stratford." CT Page 14102
The record reflects that the defendant's decision to deny the variance petitions, in light of the second prong of the hardship test, is supported by the record. Six neighbors testified that, if the regulations were not applied traffic would be increased and more parked cars would line the streets. (ROR, Item 26, pp. 15-20.) In fact, Kenneth Bigelow, a neighbor, testified-that he had recently witnessed a child almost hit by a car. (ROR, Item 26, p. 20.)
Reviewing the record as a whole, the evidence is insufficient to support the plaintiffs claim that the board abused its discretion in evaluating the impact of the variance on the comprehensive plan.
 CONCLUSION
Therefore, for the foregoing reasons, judgment hereby enters in favor of the defendant and the plaintiffs appeal is dismissed.
So ordered the 4th of November 2002.
 ___________________ STEVENS, J.