## WANDA VINE *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORTH BRANFORD ET AL.
### (AC 25837)

Schaller, McLachlan and Gruendel, Js.

(*One judge dissenting*)

Argued September 14, 2005—officially released January 3, 2006

*Pasquale Young*, with whom, on the brief, was *Daniel C. Burns*, for the appellant (plaintiff).

*John M. Gesmonde*, for the appellee (named defendant).

*Frank S. Marcucci*, for the appellee (defendant M & E Construction, Inc.).

*Opinion*

SCHALLER, J. The plaintiff, Wanda Vine,[1] appeals from the judgment of the trial court dismissing her appeal from the decision by the defendant zoning board of appeals of the town of North Branford (board), granting the application of the defendant M & E Construction, Inc. (M & E),[2] for a variance. The plaintiff claims that the court improperly determined that (1) the hardship claimed by M & E was not self-created, (2) the claimed hardship was not merely financial, (3) the "purchaser with knowledge" rule did not apply, and (4) material differences existed between the application for the variance at issue in this appeal and the application M & E filed in 2001 that was denied, which permitted the board

---

[1] The trial court found that the plaintiff owned property abutting that of the defendant M & E Construction, Inc., and therefore that she was aggrieved for purposes of standing. See General Statutes § 8-8 (a).

[2] The town of North Branford, also a defendant at trial, is not a party to this appeal.

to reverse its 2001 decision.[3] On the basis of the plaintiff's second claim, we reverse the judgment of the trial court.[4]

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. M & E acquired real properties located at 66, 72 and 76 Notch Hill Road in North Branford (town). Those properties, described in the land records as lots 26, 26A and 26B, were created by a subdivision approved in 1968 and are located in a zoning district designated as R-40. In 1977, the town amended its zoning regulations and included a requirement for a 150 foot buildable square on a lot for properties in the R-40 district. In 2001, M & E sought to combine the three lots into two proposed lots, designated A and B, and to build a residential home on each.[5] A portion of proposed lot A was encumbered by an aboveground utility easement for electrical transmission lines that Connecticut Light and Power Company had obtained in 1981 after initiating condemnation proceedings.[6]

[3] In both its brief and at oral argument, the board noted that a purpose of zoning is to eliminate nonconformities as quickly as possible and that the elimination of a nonconforming use may serve as an independent basis for the granting of a variance. See *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 572, 785 A.2d 601 (2001). That issue, however, was raised neither before the board nor the trial court and, therefore, is not properly before this court. See *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 247, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003). Furthermore, the defendants have not raised that issue as an alternate ground for affirming the court's decision. We, therefore, decline to consider that argument. See *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005).

[4] As a result of our conclusion, it is unnecessary to reach the other issues raised by the plaintiff.

[5] Because the subdivision was approved in 1968, approximately nine years prior to the effective date of the amended regulations, it would appear that the 150 foot square on a lot requirement found in the 1977 regulations would not apply to the three properties and that they may be considered legally existing nonconforming lots. See General Statutes § 8-26a (b).

[6] The record is unclear as to whether the easement was involuntarily taken or whether the prior property owner, the plaintiff, settled the condemnation action initiated by the Connecticut Light and Power Company. The record

On October 15, 2001, the board denied M & E's first application for a variance. On November 15, 2002, M & E filed a second application for a variance with respect to two sections of the town's zoning regulations. First, § 24, schedule B,[7] requires a minimum 150 foot square on each building lot. Second, § 6.25 provides that "[i]n determining compliance with minimum lot area and shape requirements of these Regulations, land subject to easements for drainage facilities and underground public utilities may be included, but not . . . easement[s] for above-ground public utility transmission lines . . . ."[8] Because of the utility easement,[9] the 150 foot square could not be located on the proposed lot A. A variance, therefore, was needed to build M & E's proposed residential dwelling.

On April 14, 2003, the board held a public hearing on M & E's application. Despite expressing some concerns about the project,[10] the board granted the variance by a four to one vote.[11] M & E was notified of the approval by a letter from the board dated April 15, 2003. Notice

does reveal, however, that the plaintiff received compensation in exchange for the easement.

[7] Section 24, schedule B, of the town's zoning regulations provides in relevant part that property in the R-40 zone must have a minimum lot of 40,000 square feet and a minimum dimension of square on the lot of 150 feet.

[8] An underground fifty-foot wide easement in favor of the Algonquin Gas Transmission Company also burdens the subject properties. As a result of § 6.25 of the town's regulations, the land affected by the underground easement was included in determining the applicable lot size.

[9] The aboveground utility easement in favor of Connecticut Light and Power Company is eighty feet wide and runs across lots 26 and 26A.

[10] Members of the board raised questions regarding whether (1) any hardship was merely financial, (2) M & E purchased the land with knowledge of the easement and (3) there had been any material changes since the denial of the first application. After discussing those topics, the application was approved.

[11] "General Statutes § 8-7 requires the concurring vote of four members of a zoning board of appeals to grant a variance." (Internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 329 n.3, 834 A.2d 801 (2003).

of the approval was published in the New Haven Register on April 17, 2003.

On April 24, 2003, the plaintiff appealed from the board's actions to the trial court. On July 7, 2004, the court issued its memorandum of decision and dismissed the plaintiff's appeal.[12] The court concluded that the property was subject to an "uncommon" hardship as a result of the utility easement that resulted from the condemnation proceeding and that the comprehensive zoning plan would not be affected. The court, quoting one of the board members, stated: "The record reveals that 'the variance is so nominal and the impact so minimal on neighbors and the lot in general that it is form over substance' to require M & E to comply with the minimum square lot requirements." This appeal followed.

As a preliminary matter, we state the appropriate standard of review and relevant legal principles that guide our resolution of the plaintiff's appeal. "Our standard of review when considering an appeal from . . . the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before

---

[12] We note that the board failed to state on the record its reasons for granting the application for a variance. "Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." (Internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 454, 853 A.2d 511 (2004); *Manchester* v. *Zoning Board of Appeals*, 18 Conn. App. 69, 71, 556 A.2d 1026, cert. denied, 212 Conn. 804, 561 A.2d 946 (1989).

the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 165, 855 A.2d 1044 (2004); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205–206, 658 A.2d 559 (1995).

We now set forth our well settled law pertaining to variances. "[General Statutes §] 8-6 (a) (3) provides in relevant part that a zoning board of appeals may determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, *owing to conditions especially affecting such parcel* but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in *exceptional difficulty or unusual hardship* . . . . A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Emphasis in original; internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 856, 670 A.2d 1271 (1996); see also *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 840–42, 859 A.2d 586 (2004), cert. granted on other grounds, 272 Conn. 920, 867 A.2d 837

(2005); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 9.3, pp. 150–55.[13] With the foregoing principles in mind, we now address the specifics of the plaintiff's appeal.

The plaintiff argues that because any hardship incurred by M & E was purely financial in nature, the board lacked authority to grant the variance. After reviewing the record before us, we agree and conclude that the board's decision to approve M & E's request was contrary to established law pertaining to variances.

In its application for a variance, M & E claimed that due to the utility easement, it would be unable to meet the 150 foot square requirement. As a result, proposed lot A could not be used as an approved building lot for construction of a home. M & E sought, therefore, a variance from § 24, schedule B, line two, and § 6.25 of the town's zoning regulations in order to achieve its goal of building a home on each of the two proposed lots.

It is well established in our jurisprudence that "[t]he power to vary the application of zoning regulations should be sparingly exercised." *Dolan* v. *Zoning Board of Appeals*, 156 Conn. 426, 429, 242 A.2d 713 (1968); see also *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857. Our Supreme Court has explained the rationale for such a rule: "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn

---

[13] Section 61.2.3 of the town's zoning regulations essentially mirrors General Statutes § 8-3 (c) and grants the board the authority "[t]o determine and vary the application of these Regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel, but not affecting generally the district in which it is situated, a literal enforcement of these Regulations would result in exceptional difficulty or unusual hardship, so that substantial justice will be done and the public safety and welfare secured."

through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 270–71, 588 A.2d 1372 (1991).

To limit the use of variances, "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . *A mere economic hardship . . . is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance.*" (Emphasis added; internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003); see also *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 208; *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 382–83, 311 A.2d 77 (1972) (neither maximum possible enrichment of particular landowner nor highest and best use of land are controlling purpose of zoning); *Cowles* v. *Zoning Board of Appeals*, 153 Conn. 116, 117–18, 214 A.2d 361 (1965); *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 570, 785 A.2d 601 (2001); *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996) (disappointment in use of property does not meet standard of exceptional difficulty); *Spencer* v. *Zoning Board of Appeals*, 15 Conn. App. 387, 392, 544 A.2d 676 (1988). Although financial considerations are not always immaterial or extraneous to the question of whether a variance should be granted, "[f]inancial considerations are relevant only in those *exceptional situations* where a board could reasonably find that the application of the regulations to the property *greatly decreases or practically destroys its value* for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of

zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect. . . . Zoning regulations have such an effect in the *extreme situation* where the application of the regulations renders the property in question *practically worthless.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 534–35, 772 A.2d 624 (2001).[14]

We are guided by our Supreme Court's decision in *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 537 A.2d 1030 (1988). In that case, the applicant sought a variance from lot area and frontage requirements. Id., 366. The applicant wanted to sell the vacant lot that

---

[14] The dissent argues that it is proper to grant a variance when an owner is denied "reasonable use" of property, citing *Giarrantano* v. *Zoning Board of Appeals*, 60 Conn. App. 446, 760 A.2d 132 (2000). In our view, that argument does not correctly apply the *Giarrantano* holding and would expand the basis on which a variance may be granted. In *Giarrantano*, due to both the topography of the land and its narrowness, a strict enforcement of the zoning regulations, namely, the setback and buffer strip requirements, left the property owner with thirty-nine feet of usable land in a commercial zone. Id., 449. The city of Norwich zoning regulations used the phrase "reasonable use of the land"; (internal quotation marks omitted) id., 448 n.1; in describing the powers of the zoning board of appeals. The property owner adopted that phrase in his application for the variance, as well as in his argument before the board. Id., 448–49.

In reversing the decision of the trial court, we concluded that from "[the applicant's] evidence, the board was justified in finding that [the applicant] *would suffer unusual hardship* that would deprive him of the reasonable commercial use of his property if the code were applied strictly." (Emphasis added.) Id., 453. It was, therefore, the unusual hardship that justified the granting of the variance rather than the deprivation of a reasonable commercial use. See id. We disagree, therefore, with the dissent, that a variance may be granted on the basis of the denial of reasonable use of the property. To adopt such a standard would represent a significant change in our zoning jurisprudence, namely, our Supreme Court's repeated instructions that variances are to be granted sparingly and only in exceptional situations.

Finally, we note that it was clear from the record in *Giarrantano* that the applicant was left with thirty-nine feet to use in a commercial zone. The shape and location of the land, coupled with a strict enforcement of the zoning regulations, constituted the unusual hardship that justified the granting of the variance. The record in the present case reveals that M & E failed to introduce any evidence that the property suffered such an unusual hardship.

adjoined his property. Id. The buyer, who also owned property that adjoined the vacant lot, wanted to purchase it to build a two-family house. Id. The applicant presented evidence to the zoning board of appeals of the town of West Haven that the vacant lot had a value of $26,000 if the house could be built and a value of $8000 in the event that a house could not be built. Id. The applicant, therefore, sought a variance for the purpose of establishing a buildable lot. Id., 363. Simply put, she needed a variance to use the property as she wanted and demonstrated the economic impact of the regulations on the property in an effort to obtain the variance so that a home could be built. Id., 366.

In reversing the trial court's decision upholding the action of the board in granting the variance for the vacant lot, our Supreme Court stated: "We disagree, however, with the trial court's conclusion drawn from the record of the public hearing that the inability to erect a one-family or two-family residence on the lot meant that [the applicant] could make no reasonable use of the lot and thus its market value was minimal. It was undisputed that [the applicant] was using the vacant lot as a side yard for the house she owned on the adjoining lot. Such a use was certainly reasonable and undoubtedly would enhance the price she would receive for the property as a whole if she were to sell it. The evidence indicated also that the [prospective purchaser] had offered her $8000 for the lot in 1982 so that he might use it, not as a building lot, but as a side yard for his adjoining property. According to the assessor's records the lot had a market value of $5000. This valuation of the lot for the purpose of its current use as a side yard cannot fairly be characterized as minimal." (Internal quotation marks omitted.) Id., 369–70.

The court in *Grillo* further stated: "Unquestionably the lot would have a much higher value, estimated at $26,000 by an appraiser testifying for [the applicant] at

the hearing, if it could be used as a building lot. A zoning regulation that prevents land from being used for its greatest economic potential, however, does not create the exceptional kind of financial hardship that we have deemed to have a confiscatory or arbitrary effect. . . . In the case before us there is no evidence that the vacant lot is unmarketable for its present use as a side yard enhancing the value of the adjoining [applicant's] property or of other adjoining properties, such as that of the plaintiff. Proof of financial hardship having a confiscatory or arbitrary effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations." (Citation omitted; internal quotation marks omitted.) Id., 370–71.

*Norwood* is also instructive in our resolution of the present appeal. In *Norwood*, the defendants Anderson and MacArthur appealed from the judgment of the trial court sustaining the plaintiffs' zoning appeal. *Norwood* v. *Zoning Board of Appeals*, supra, 62 Conn. App. 529. The trial court reversed the decision of the zoning board of appeals of the town of Branford granting the defendants a variance. Id. In 1967, MacArthur had obtained property designated as lot 8, and in 1974, she purchased an adjoining parcel of land designated lot as 9. Id., 530. In 1979, she received permission to build an enclosed porch as an addition to her existing dwelling, which was located on lot 9. Id. The new addition extended onto what had been lot 8. Id. In 1989, MacArthur quitclaimed what had been lot 8 to Anderson. Id., 531. Lot 8 was a nonconforming, nonbuildable lot. Id. In 1998, both MacArthur and Anderson sought variances to reduce the minimum lot area so that a dwelling could be built on each lot. Id. Anderson claimed the loss of profit resulting from her inability to sell the nonbuildable lot 8 as the hardship sufficient to warrant a variance. Id.

The board granted the variance, but the trial court reversed the board. Id.

In rejecting the defendants' appeal to this court, we acknowledged that Anderson would not realize the profit from selling the land. Id., 534. We determined, nevertheless, that financial concern was not a legally cognizable hardship that would permit the board to grant a variance. Id., 534–35. We noted the trial court's conclusion that "denial of Anderson's variance would not amount to confiscation, as lot 8 remains an attractive potential lot for an abutting landowner's property." Id., 534.

In the present case, we are persuaded that the restrictions imposed by the zoning regulations cause only the type of financial deprivation described in the *Grillo* and *Norwood* cases.[15] Although M & E is precluded from building two homes, one on proposed lot A and one on proposed lot B, as a result of the utility easement, that deprivation does not warrant a variance. We reiterate our Supreme Court's admonition that a zoning regulation preventing land from being used for the greatest

---

[15] The dissent argues that the regulations deprived M & E of "the reasonable and legitimately expected use of the three approved lots." This statement is troublesome for two reasons. First, our review of the record fails to reveal any evidence indicating that the property cannot be put to some use. There is no evidence in the record indicating that constructing two homes on the subject property constitutes its only viable use. M & E, despite the denial of its variance application, retains the right to put the subject property to use for residential construction purposes. Second, while M & E had the right to apply for a variance, our law provides no authority for the proposition that expectation—even *legitimate expectation*—is a proper basis for the granting of a variance. As noted, in our zoning jurisprudence, it is well established that approval of a variance is to be limited and sparingly used only in appropriate situations in which legally cognizable hardship is demonstrated. We disagree, therefore, on the relevance of any *expectation* on the part of M & E that it could use its property to construct two residences rather than put it to alternate uses. In our view, M & E's *expectation* is merely a financial concern which, under our law, does not warrant the granting of a variance.

economic potential, by itself, fails to create the unusual type of financial hardship necessary to be considered a confiscatory or arbitrary effect. *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 370; see also *Dolan* v. *Zoning Board of Appeals*, supra, 156 Conn. 430–31 ("[i]t is not a proper function of a zoning board of appeals to vary the application of zoning regulations merely because the regulations hinder landowners and entrepreneurs from putting their property to a more profitable use"). M & E retains the ability to develop and to use the properties in a manner consistent with the existing zoning regulations. For example, a single large home with a significant amount of surrounding land could be constructed on the proposed lots without the need for a variance.[16] The additional land on proposed lot A could be an attractive feature to the owner of a home built on proposed lot B. The fact that the zoning restrictions may burden the properties or cause them to fall short of M & E's expectations with respect to their economic value does not justify the board's decision to grant a variance.

Furthermore, M & E presented *no evidence*, before either the board or the trial court,[17] that the zoning

_____

[16] As we have noted, the record seems to indicate that the 150 foot square on a lot requirement was enacted effective in 1977 and, thus, subsequent to the 1968 subdivision approval. As a result, the three lots appear to be nonconforming lots, and M & E apparently may use the property to build three smaller homes, one on each lot. Although this may not be the ideal financial use for the property, it remains a viable alternative and serves to strengthen our conclusion that M & E's request for a variance was based solely on financial concerns.

[17] General Statutes § 8-8 (k) provides: *"The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal.* The court may take the evidence or may appoint a referee or committee to take such evidence as it directs and report the same to the court, with any findings of facts and conclusions of law. Any report of a referee, committee or mediator under subsection (f) of section 8-8a shall

regulations on the property either result in a confiscatory taking or effectively destroy the economic utility of the land. See *Kelly* v. *Zoning Board of Appeals*, 21 Conn. App. 594, 599, 575 A.2d 249 (1990); see also *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals*, 143 Conn. 257, 261–62, 121 A.2d 637 (1956). M & E, as the applicant for the variance, was required to establish by substantial evidence that the application of the zoning regulation greatly decreased the value of its properties, practically destroying their value. See *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 569, 785 A.2d 601 (2001); *Eagan* v. *Zoning Board of Appeals*, 20 Conn. App. 561, 563, 568 A.2d 811 (1990). "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, supra, 85 Conn. App. 170. In the present case, we are unable to ascertain *any evidence* presented either to the board

constitute a part of the proceedings on which the determination of the court shall be made." (Emphasis added.)

In the present case, the court granted the plaintiff permission to present additional evidence at trial. M & E did not move to introduce evidence regarding the value of proposed lot A if it could not be used as a buildable lot.

or to the trial court with respect to the value of proposed lot A if it cannot be utilized for a residential lot. M & E, therefore, failed to establish its burden of demonstrating a hardship. See *Hoffer* v. *Zoning Board of Appeals*, 64 Conn. App. 39, 42–43, 779 A.2d 214 (2001).

In summary, we reiterate that a zoning board of appeals may grant a variance only on the finding of exceptional or unusual circumstances. See *Campion* v. *Board of Aldermen*, supra, 85 Conn. App. 841–42. Our Supreme Court requires that a zoning regulation must virtually destroy the value of property for any use before financial considerations become relevant to an application for a variance. See *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 210; *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 699, 626 A.2d 698 (1993) (noting "extreme financial hardship" can support granting of variance); see also *Horace* v. *Zoning Board of Appeals*, supra, 85 Conn. App. 171. The record does not reveal any evidence of such a drastic impact on M & E's property.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion GRUENDEL, J., concurred.

McLACHLAN, J., dissenting. Although I agree with the majority's statement of the facts, I would add the following facts: (1) the lots for which the defendant M & E Construction, Inc. (M & E), sought a variance have been assessed and taxed as separate building lots by the town of North Branford and conveyed and treated as separate lots by previous owners of the subject property since the lots were created in 1968; and (2) the combined area of the three lots is more than 152,000 square feet, with M & E's proposed lot A being more than 72,000 square feet and proposed lot B being

more than 79,000 square feet, in a zoning district desig-
nated as R-40 that requires a lot size of only 40,000
square feet. In addition, I would emphasize the follow-
ing facts: (1) the three subject lots are part of a four
lot subdivision approved in 1968 so that, at that point
in time, a residential dwelling could have been con-
structed on each of the four lots; and (2) the Connecti-
cut Light and Power Company easement encumbering
the subject property was involuntarily taken in 1981 in
a condemnation proceeding.

M & E acquired the three lots in July, 2001. As noted
in the majority opinion, the 150 foot buildable square
regulation was enacted after the subdivision that cre-
ated the lots was approved in 1968 and does not apply to
those legally existing, nonconforming lots. See General
Statutes § 8-26a (b). Instead of building a residential
dwelling on each of the three lots, as M & E had the
right to do, it presented the defendant zoning board of
appeals of the town of North Branford (board) with a
proposal to combine the three lots into two lots and
sought a variance to reduce the buildable square
requirement on one of the lots, which requirement was
not imposed on the three "grandfathered" lots. M & E
proposed to build two houses instead of three houses
on 152,000 square feet of land. In granting the variance,
the board took into account the fact that the three lots
have been assessed and taxed as separate lots since
1968 and its concerns over the enormity of the utility
easement.

Given those facts and the deference to be accorded
a zoning board's decision, I respectfully disagree with
the majority's conclusion that the hardship in this case
is merely financial. I would also conclude that the hard-
ship was not self-created and that the board properly
could find a change in conditions or circumstances that
would permit the granting of the variance request in
M & E's second application after its first application

was denied in 2001. Accordingly, I would affirm the judgment of the trial court.

I

I respectfully disagree with the majority's conclusion that the hardship proffered by M & E was merely financial in nature and, therefore, insufficient for purposes of obtaining a variance. This is not a situation in which the applicant seeks to build an addition onto an already existing structure or seeks to enhance the value of the property by proposing a new or additional use at variance with current regulations. M & E acquired three approved subdivision lots, taxable as three separate building lots.

By combining the lots, M & E proposed to construct two residential dwellings on two reconfigured lots. The plaintiff, Wanda Vine, an owner of abutting property, argues that M & E is restricted to one residential dwelling on the three combined lots, thereby reducing the use of its property from three residential dwellings to one residential dwelling. The plaintiff claims that such a reduction is merely a financial hardship because M & E cannot use its property to its maximum potential. In actuality, however, as indicated in the majority opinion, M & E has the right to build three houses on three lots, but has presented a proposal to build two houses on two larger lots. Because that is a new proposal and the buildable square regulation is now in place, M & E had to seek a variance because the utility easement makes compliance impossible. Given that scenario, it is difficult to comprehend how the claimed hardship is merely financial when M & E proposes to build less than it is entitled to build.

"[I]t is well established that financial considerations, unless they greatly decrease or destroy the value of the property, do not constitute a cognizable legal hardship that would warrant a variance." *Horace* v. *Zoning Board*

*of Appeals*, 85 Conn. App. 162, 171, 855 A.2d 1044 (2004). Virtually any land use restriction has economic consequences. If the hardship results in the deprivation of the reasonable use of the property, however, the hardship is not merely financial in nature. For example, our Supreme Court affirmed the granting of a variance in *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 365 A.2d 387 (1976), even though there was no "practical confiscation"; (internal quotation marks omitted) id., 152; because a portion of the property could be used for some permitted use without a variance. Nevertheless, the applicant in that case would be deprived of more than 85 percent of the use of that property, greatly diminishing the value of the land. Id.

Similarly, we have concluded that it is appropriate to grant a variance when a zoning regulation prevented the reasonable use of a particular property for its intended purpose. In *Giarrantano* v. *Zoning Board of Appeals*, 60 Conn. App. 446, 447–48, 760 A.2d 132 (2000), the applicant's property was located in a commercial zone, but had a preexisting nonconforming residence on the lot. The zoning board of appeals granted a variance request to reduce setback and buffer requirements to permit the construction of a hotel on the property. Id. Reversing the trial court's decision, we determined that the zoning board of appeals was justified in finding that the applicant would suffer unusual hardship that would deprive him of the reasonable commercial use of his property if the regulations were strictly applied. Id., 454–55.

The two cases relied on by the majority in concluding that M & E's hardship is merely financial are distinguishable from the present case. In *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 537 A.2d 1030 (1988), and *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 772 A.2d 624 (2001), the applicants stated their hardships in terms of financial deprivation. The vacant

lot in *Grillo* had a value of $26,000 if a house could be constructed on it and a value of $8000 if it could be used only as a side yard for the existing house. *Grillo* v. *Zoning Board of Appeals*, supra, 366. The vacant lot was *not* an approved subdivision lot and, as noted in the court's conclusion, there was another section of the zoning regulations that might have permitted the issuance of a special exception for the vacant lot if the applicant met certain requirements. In *Norwood*, one of the applicants claimed that her hardship would be her lost profit if she was denied the opportunity to sell her lot as a buildable lot. *Norwood* v. *Zoning Board of Appeals*, supra, 534. The other applicant claimed overpayment of property taxes as her hardship because the town taxed her lot as a buildable lot although it was a nonconforming, nonbuildable lot. Id., 535–36. The claimed hardships were couched solely in terms of financial losses.

In the present case, M & E has three approved subdivision lots. Those lots, since their creation, have been taxed and treated as three separate building lots. The easement, making compliance with the regulations impossible, is a condition unique to the property. M & E's application for a variance states that its claimed hardship is the eighty foot utility easement, taken in an involuntary condemnation proceeding, which makes it impossible for the applicant to meet the 150 foot buildable square requirement. In *Grillo* and *Norwood*, the hardships claimed were solely economic. Here, the claimed hardship is the inability to use the land for its approved purpose.

Neither M & E nor its predecessors in title have taken any actions to create the problem preventing compliance with the current regulations. If the regulations were applied strictly to the property at issue, M & E would be deprived of the reasonable and legitimately expected use of its property. Accordingly, I would con-

clude that the board was justified in finding that M & E proved the requisite hardship necessary for its requested variance.

## II

M & E purchased the three approved subdivision lots in July, 2001, after the Connecticut Light and Power Company acquired its aboveground easement through a condemnation proceeding against the former property owner. The "purchase with knowledge" rule, which would preclude M & E from obtaining a variance, does not apply under those circumstances.

"A person who buys a nonconforming lot or who acquires property with a nonconforming use caused by a change in the zoning regulations has the same right to obtain a variance as the seller of the property, and is not barred from obtaining a variance by the purchase with knowledge rule. However, the purchase with knowledge rule would bar the buyer of an *illegal* lot from obtaining a variance where he purchased the property with knowledge of the problem. For example, the owner was not entitled to a variance when the lot was improperly divided by a predecessor in title. There is a fine line between these two situations; the cases make a distinction between purchasing a nonconforming lot (or one with a nonconforming use) and purchasing a lot which is *illegal*, which has a problem due to self-created hardship, or applying for a use not allowed in the zone." (Emphasis added.) R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 9.4, pp. 190–91.

That distinction was made very clear in a recent decision of this court. See *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 879 A.2d 494 (2005). "The defendants rely on our Supreme Court's decision in *Abel* v. *Zoning Board of Appeals*, [172 Conn. 286, 374 A.2d 227 (1977)], in arguing that, because the plaintiff

purchased the lot with the knowledge that it was non-conforming under the zoning regulations, his hardship was self-created. *Abel* and its progeny, however, make clear that the knowledge required for self-created hardship is knowledge that the property *never was intended* for the use the plaintiff seeks. See, e.g., id., 287 (lot reserved in subdivision plan as park, not as building lot); *Kalimian* v. *Zoning Board of Appeals*, [65 Conn. App. 628, 783 A.2d 506] (plaintiff could not obtain variance for manufacturing business for lot in residential use district) [cert. denied, 258 Conn. 936, 785 A.2d 231 (2001)]; *Spencer* v. *Zoning Board of Appeals*, 15 Conn. App. 387, 544 A.2d 676 (1988) (plaintiff could not obtain variance from minimum square footage requirement where plaintiff sought to subdivide lot)." (Emphasis in original.) *Sydoriak* v. *Zoning Board of Appeals*, supra, 660–61 n.10.

In the present case, the three lots were approved as separate legal building lots in 1968 and have been taxed separately as such since that time. The subdivision approval conferred vested rights on the property, as set forth in § 8-26a. The subject utility easement, acquired after subdivision approval, was taken in a condemnation proceeding. The condemnation did not make the lots illegal, it just made them nonconforming as to M & E's new proposal. Through circumstances beyond the control of M & E, compliance with the current regulations is not possible. This is not a self-created hardship, and the "purchase with knowledge" rule does not apply.

III

M & E submitted variance applications for the subject property in 2001 and 2002. Although the board denied the first variance request, it found that certain considerations presented in connection with the second request permitted the granting of the variance. The trial court

concluded that there was sufficient evidence in the record to demonstrate that the board did not act unreasonably or illogically by reversing its prior denial of the variance. I agree with the trial court.

When a party files successive applications for the same property, a court must first determine whether the two applications seek the same relief. The zoning board determines that question in the first instance, and its decision will not be disturbed unless it has abused its discretion. *Fiorilla* v. *Zoning Board of Appeals*, 144 Conn. 275, 279, 129 A.2d 619 (1957). If the applications are substantially similar, "the second inquiry is whether there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided." (Internal quotation marks omitted.) *Laurel Beach Assn.* v. *Zoning Board of Appeals*, 66 Conn. App. 640, 645–46, 785 A.2d 1169 (2001).

The two variance requests were submitted by the same owner for the same property, seeking essentially the same relief. The board found, however, that the second variance request could be approved because of the following considerations: (1) the board learned for the first time that the three lots owned by M & E were taxed independently and sold as separate entities; (2) the board determined for the first time that the minimum square lot requirements could never be satisfied for the three approved subdivision lots either as two reconfigured lots or as one combined lot because of the magnitude and location of the utility easement; (3) the proposed property line dividing proposed lots A and B was moved to accommodate the proposed driveway; and (4) the board was made aware of the enormity of the easement, as set forth in a memorandum by the town planner. "For an appellate court, the only question is whether the trial court's finding as to the zoning board's decision is clearly erroneous." Id., 646.

The board determined that those factors, previously unknown to it, materially affected the merits of the matter so as to permit approval of the second variance application, and the trial court found that this conclusion was not unreasonable or illogical. The argument has been made that, except for the change in the boundary line, those were facts in existence at the time of the first application. In essence, the plaintiff claims that those were not changes that occurred between the time of the first application and the submission of the second application and, therefore, cannot be a change in conditions sufficient to warrant a reversal in the board's decision. Case law does not support that claim.[1]

The board reasonably could have concluded that "other considerations have intervened which materially affect the merits of the matter decided." (Internal quotation marks omitted.) Id., 645–46. The board simply did not have the necessary information before it at the time of the first application. We previously have sanctioned a board's approval when the information submitted in connection with a second application was tax information, which could have been presented at the time of the first application. In *Laurel Beach Assn.*, a subsequent applicant submitted a variance application that was allegedly substantially the same as one submitted by a

---

[1] In *Bradley* v. *Inland Wetlands Agency*, 28 Conn. App. 48, 49, 609 A.2d 1043 (1992), the inland wetlands agency granted the plaintiff's application for a wetlands permit to construct a single-family residence. The permit expired because the plaintiff did not initiate activity within one year, as required by the regulations. Id. He reapplied and claimed that the inland wetlands agency should approve the subsequent application because nothing had changed concerning the property since the approval of the original application. Id., 49–50. The inland wetlands agency denied the subsequent application because it had become aware of severe problems downstream from the plaintiff's property that it was not aware of when the original application was approved. Id., 50. The court concluded that "the [inland wetlands agency] acted properly in considering factors that came to light between the . . . approval and the subsequent . . . [denial] . . . ." Id., 51–52.

prior applicant. The second applicant submitted to the board various photographs of the subject lots, subdivision maps, a certificate of title with related documentation showing the property's chain of title and tax bills showing that both lots were taxed separately by the city. Id., 647. "[T]hat information was not presented to the zoning board when [the prior applicant] applied for a permit in 1988. As a result, the zoning board could have properly granted the permit in 1998 even if it did view the relief requested as substantially similar." Id., 647–48.

Zoning boards typically are comprised of laypeople making the best decisions they can on the basis of the information provided. People coming before the local boards often are the owners or applicants themselves, without the benefit of legal representation. This court cannot expect them to adhere to the same standards required of attorneys in legal matters before the courts, where any arguments that can be raised must be raised at that time or will be deemed to be abandoned. The board in this case simply did not have important information at the time it made its decision on the first application. It subsequently was presented with a much more accurate depiction of the situation surrounding the three approved subdivision lots and the scope of the aboveground utility easement. The plaintiff's claim that local land use agencies can only consider events that occur in time between the first and second applications in considering whether to reverse a prior decision simply is not supported by statute or case law. See id., 645–46.

I would conclude that (1) the claimed hardship was not merely financial in nature, (2) M & E's hardship was not self-created, and the "purchase with knowledge" rule does not apply under the circumstances at issue, and (3) the board's reversal of its previous decision was not unreasonable or illogical. For those rea-

sons, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.

