WANDA VINE *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORTH BRANFORD ET AL.
(AC 25837)

Schaller, McLachlan and Gruendel, Js.

Submitted May 25—officially released July 31, 2007

*Daniel C. Burns* and *Pasquale Young*, for the appellant (plaintiff).

*John M. Gesmonde*, for the appellee (named defendant).

*Frank S. Marcucci*, for the appellee (defendant M & E Construction, Inc.).

*Opinion*

SCHALLER, J. This zoning appeal returns to this court on remand from our Supreme Court; *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 916 A.2d 5 (2007); for resolution of the claim of the plaintiff, Wanda Vine, that the trial court improperly determined that the defendant

zoning board of appeals of the town of North Branford (board) had the authority to grant a variance after it previously had denied the first application for a variance by the defendant M & E Construction, Inc. (M & E).[1] We affirm the judgment of the trial court.

In the plaintiff's first appeal to this court, she claimed that "the court improperly determined that (1) the hardship claimed by M & E was not self-created, (2) the claimed hardship was not merely financial, (3) the 'purchaser with knowledge' rule did not apply and (4) material differences existed between the application for the variance at issue in this appeal and the application M & E filed in 2001 that was denied, which permitted the board to reverse its 2001 decision." *Vine* v. *Zoning Board of Appeals*, 93 Conn. App. 1, 2–3, 887 A.2d 442 (2006), rev'd, 281 Conn. 553, 916 A.2d 5 (2007). In a divided opinion, the majority of this court concluded that the board lacked authority to grant the variance because any hardship incurred by M & E was purely financial in nature. Id., 7. As a result of this conclusion, the majority of this court did not reach the other issues raised by the plaintiff. Id., 3 n.4. Additionally, the majority stated: "In both its brief and at oral argument, the board noted that a purpose of zoning is to eliminate nonconformities as quickly as possible and that the elimination of a nonconforming use may serve as an independent basis for the granting of a variance. See *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 572, 785 A.2d 601 (2001). That issue, however, was raised neither before the board nor the trial court and, therefore, is not properly before this court. See *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 247, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003). Furthermore, the defendants have not raised that issue as an alternate ground for affirming the

[1] The town of North Branford, also a defendant at trial, is not a party to this appeal.

court's decision. We, therefore, decline to consider that argument. See *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005)." *Vine* v. *Zoning Board of Appeals*, supra, 3 n.3.

Our Supreme Court granted the petitions for certification filed by the board and M & E, limited to the following issue: "Did the Appellate Court properly conclude that the variance granted by the named defendant, the zoning board of appeals of the town of North Branford, was improper because the hardship was merely financial?" (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 277 Conn. 918, 895 A.2d 794 (2006). Our Supreme Court acknowledged that "the Appellate Court . . . was technically correct when it determined that the board previously had not raised or preserved for review the claim that it properly had granted the variance because it would reduce a preexisting nonconforming use under *Stancuna* [v. *Zoning Board of Appeals*, supra, 66 Conn. App. 572] and *Adolphson* [v. *Zoning Board of Appeals*, 205 Conn. 703, 708–10, 535 A.2d 799 (1988)]." *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 567.

Due to the "extraordinary circumstances" of this case, our Supreme Court determined that review of the defendants' claim that *Stancuna* and *Adolphson* applied was warranted. Id., 569. The court explained: "First, the issue before us is a pure question of law and does not involve the exercise of discretion by the board or the trial court. Second, unlike the trial court in nonadministrative appeals, the board, which was the initial decision maker in this case, is a party to this appeal and raises the issue that we review. Consequently, we know how the board would have ruled on the issue if it had been raised previously, and there is no possibility that we might usurp its discretion by reviewing it. Third, the record is adequate for review, the issue has been fully briefed by all of the parties, and considering the

claim could result in no unfair surprise or prejudice to the plaintiff." Id.

Our Supreme Court concluded that *Stancuna* and *Adolphson* provided an alternate ground for affirming the decision of the board because "granting the variance would increase the size and buildable area of the lots, resulting in a development that more nearly conforms to the technical requirements of the town's zoning regulations." Id., 570. "This conclusion disposes of all of the plaintiff's claims on appeal to the Appellate Court relating to the merits of M & E's application for a variance. The Appellate Court must address on remand, however, the plaintiff's claim that the board improperly reversed its denial of M & E's first application for a variance because material differences existed between the first application and the application under review in this appeal." Id., 572.

The facts underlying this appeal were set out at length in our previous opinion. "M & E acquired real properties located at 66, 72 and 76 Notch Hill Road in North Branford (town). Those properties, described in the land records as lots 26, 26A and 26B, were created by a subdivision approved in 1968 and are located in a zoning district designated as R-40. In 1977, the town amended its zoning regulations and included a requirement for a 150 foot buildable square on a lot for properties in the R-40 district. In 2001, M & E sought to combine the three lots into two proposed lots, designated A and B, and to build a residential home on each. A portion of proposed lot A was encumbered by an aboveground utility easement for electrical transmission lines that Connecticut Light and Power Company had obtained in 1981 after initiating condemnation proceedings.

"On October 15, 2001, the board denied M & E's first application for a variance. On November 15, 2002, M & E filed a second application for a variance with respect

to two sections of the town's zoning regulations. First, § 24, schedule B, requires a minimum 150 foot square on each building lot. Second, § 6.25 provides that '[i]n determining compliance with minimum lot area and shape requirements of these Regulations, land subject to easements for drainage facilities and underground public utilities may be included, but not . . . easement[s] for above-ground public utility transmission lines . . . .' Because of the utility easement, the 150 foot square could not be located on the proposed lot A. A variance, therefore, was needed to build M & E's proposed residential dwelling.

"On April 14, 2003, the board held a public hearing on M & E's application. Despite expressing some concerns about the project, the board granted the variance by a four to one vote. M & E was notified of the approval by a letter from the board dated April 15, 2003. Notice of the approval was published in the New Haven Register on April 17, 2003.

"On April 24, 2003, the plaintiff appealed from the board's actions to the trial court. On July 7, 2004, the court issued its memorandum of decision and dismissed the plaintiff's appeal. The court concluded that the property was subject to an 'uncommon' hardship as a result of the utility easement that resulted from the condemnation proceeding and that the comprehensive zoning plan would not be affected. The court, quoting one of the board members, stated: The record reveals that the variance is so nominal and the impact so minimal on neighbors and the lot in general that it is form over substance to require M & E to comply with the minimum square lot requirements." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, supra, 93 Conn. App. 3–5.

As instructed by the remand from our Supreme Court, the sole issue for our consideration is the plaintiff's

claim that the board lacked the authority to grant M & E's second application for a variance because no material differences existed between the first application and the second application. The following additional facts are necessary for our discussion. In July, 2001, M & E submitted an application to the board for a variance for the adjoining properties located at 66 and 72 Notch Hill Road. Following a public hearing held on October 15, 2001, the board, by a three to one vote, denied the application for a variance.

At the April 14, 2003 public hearing on M & E's second application for a variance, Paul Lamber, a professional engineer, stated that the proposed lot line that separated lot A from lot B was changed in the second application for a variance to accommodate the proposed driveway. The board also learned, for the first time, that the property was assessed and had been taxed as three separate building lots. Finally, the board was made aware of the scope and substantial effect of the easement on the subject property.

As a preliminary matter, we set forth our standard of review and the applicable legal principles. "Trial courts defer to zoning boards and should not disturb their decisions so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . The trial court should reverse the zoning board's actions only if they are unreasonable, arbitrary or illegal. . . . The burden of proof is on the plaintiffs to demonstrate that the zoning board acted improperly. . . .

"When a party files successive applications for the same property, a court makes up to two inquiries. The first is to determine whether the two applications seek the same relief. The zoning board determines that question in the first instance, and its decision may be overturned only if it has abused its discretion. . . . If the applications are essentially the same, the second inquiry

is whether there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided. . . . For an appellate court, the only question is whether the trial court's finding as to the zoning board's decision is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Laurel Beach Assn.* v. *Zoning Board of Appeals*, 66 Conn. App. 640, 645–46, 785 A.2d 1169 (2001); see *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 367, 537 A.2d 1030 (1988); *Sharp* v. *Zoning Board of Appeals*, 43 Conn. App. 512, 522–23, 684 A.2d 713 (1996).

With respect to the first inquiry, we conclude that the board implicitly determined that the two variance requests sought essentially the same relief, namely, permission not to comply with the 150 foot square requirement contained in the zoning regulations. We therefore focus on the second inquiry, which is whether the board properly determined that there had been a change of conditions or other considerations had intervened that materially affected the merits of the matter decided.

The board did not articulate its reasons for approving the variance in favor of M & E. The court therefore properly searched the record. See *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 532, 772 A.2d 624 (2001) ("[w]here . . . the board has not articulated the reasons for its actions, the court must search the entire record to find a basis for the board's decision"); see also *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 544, 600 A.2d 757 (1991).[2] In

---

[2] Steve DeFrank, a member of the board, commented that "based upon the representation that the fact I was not aware of potentially a material fact that wasn't raised the last time they came that there is some small difference with regard to the driveway . . . I would vote to approve [the application]." Our Supreme Court, however, has instructed that mere utterances of an individual member do not constitute a formal, official collective statement of the entire board. See *Harris* v. *Zoning Commission*, 259 Conn. 402, 420, 788 A.2d 1239 (2002).

its memorandum of decision, the court stated that the record revealed: (1) the board inquired about the changes that occurred between the two applications; (2) the proposed property line dividing lots A and B was moved to accommodate the proposed driveway; (3) it was brought to the attention of the board that the property had been taxed, assessed and sold independently since 1968; and (4) the board discussed its concerns regarding the enormity of the easement. The court also concluded that the board found these factors to be material considerations affecting the merits of the application. It further determined that sufficient evidence in the record demonstrated that the board did not act unreasonably or illogically by reversing its prior denial of the variance.

On appeal, the plaintiff argues that moving the location of the proposed driveway did not constitute a material change to warrant a reversal of the prior decision of the board. She further contends that the information regarding the tax status and scope of the easement did not relate to the use of the land and therefore "cannot result in a finding of a material change in circumstances concerning the land." We do not agree.

In *Laurel Beach Assn.* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 642–43, the applicant filed a request for a zoning permit and a special exception in order to build a home, which initially was denied. After the town had removed the special exception requirement, the applicant, approximately ten years after the denial, filed a second request, which the board granted. Id., 644. The record before the zoning board revealed that, as part of the second application, the applicant had submitted "several photographs of the lots, copies of checks and tax bills showing that both lots [were] taxed separately by the city and by the plaintiff, subdivision maps and a certificate of title with related documentation showing the property's chain of title." Id.,

647. This information had not been presented to the zoning board at the time of the initial application. Id., 650. "As a result, the zoning board could have properly granted the [second application for a] permit . . . even if it did view the relief requested as substantially similar." Id., 648; see also *Consolini* v. *Inland Wetlands Commission*, 29 Conn. App. 12, 17, 612 A.2d 803 (1992) (significant change in conditions and intervening considerations where representative of developer did not attend hearing after being informed matter would not be heard, but attended subsequent hearing and provided oral testimony and written evidence); *Bradley* v. *Inland Wetlands Agency*, 28 Conn. App. 48, 50–52, 609 A.2d 1043 (1992) (change in circumstances existed where board learned of flooding problems justifying board in denying second request for permit after it previously had granted permit, but applicant had failed to begin work in timely manner).[3]

---

[3] We are mindful of our Supreme Court's decision in *Mynyk* v. *Board of Zoning Appeals*, 151 Conn. 34, 193 A.2d 519 (1963). In that case, the applicant applied for a certificate of approval of the location of a proposed gasoline station. Id., 35. At the public hearing, the discussion focused on the issue of the effect of the proposed station on traffic, with several neighboring property owners submitting written objections. Id., 36. After being denied by the defendant board of zoning appeals, the applicant filed a request to open the matter and to submit additional evidence. Id. The board never acted on this request, and the applicant appealed to the Court of Common Pleas. Id. While the appeal was pending, the applicant made a second application to the board for a certificate of approval, and a hearing was held on April 4, 1961. Id., 36–37. On that day, the applicant withdrew his appeal of the denial of his first application. Id., 37. Following this hearing, the plaintiff's second application was granted by the board. Id. The Court of Common Pleas sustained an appeal, filed by several neighboring property owners, contesting the board's decision. Id.

The plaintiff appealed to our Supreme Court, which affirmed the judgment of the trial court. Specifically, the court stated: "At the hearing, no change of conditions or alteration of circumstances was shown. Each side merely took advantage of the opportunity thus afforded to offer further and more extensive evidence, all of which could have been produced at the first hearing." Id., 38. In other words, the applicant and the neighbors provided the board with additional evidence with respect to facts that were already known to the board at the time of the first hearing, namely, of the issue of

The record in the present case reveals that M & E, at the hearing on its second application for a variance, submitted information to the board that it did not have at the time of the first hearing. The record further reveals that by moving the location of the proposed driveway, the impact to the wetlands area was lowered. As a result of the board becoming aware of these matters, it reasonably could have concluded that other considerations had intervened that materially affect the merits of the matter decided. See *Laurel Beach Assn.* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 645–46.[4] As aptly noted in the dissenting opinion in our previous decision, "[t]he board in this case simply did not have important information at the time it made its decision on the first application. It subsequently was presented with a much more accurate depiction of the situation surrounding the three approved subdivision lots and the scope of the aboveground utility easement." *Vine* v. *Zoning Board of Appeals*, supra, 93 Conn. App. 24 *(McLachlan, J.,* dissenting). On the basis of this record, we conclude that the trial court properly determined that the board acted fairly and with proper motives or upon valid reasons when it granted M & E's second application for a variance.

The judgment is affirmed.

In this opinion the other judges concurred.

---

the impact of the gasoline station on traffic. The board was not provided with any new topics for consideration. That fact distinguishes *Mynyk* from the present case, in which the board received information regarding the tax status and the scope of the easement, matters that had not been presented to the board at the first hearing.

[4] We note that the plaintiff does not argue that the board's claims regarding the tax status of the properties and the scope of the easement are barred by the doctrine of res judicata.